IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| In Re: | ) | CHAPTER 7 |
| | ) | |
| AEROSOL PACKAGING, LLC, | ) | CASE NO. 06-67096-mhm |
| A Georgia limited liability company, | ) | |
| | ) | JUDGE MURPHY |
| Debtor. | ) | |

**OBJECTION OF BLUE RIDGE INVESTORS, II L.P. TO
DISCLOSURE STATEMENT FOR DEBTOR'S FIRST
AMENDED PLAN OF REORGANIZATION**

COMES NOW Blue Ridge Investors, II, L.P. ("Blue Ridge"), a secured creditor and party-in-interest, by and through the undersigned counsel, and hereby files this "Objection of Blue Ridge Investors, II, L.P. to Disclosure Statement for Debtor's First Amended Plan of Reorganization" ("Objection"). In support of the Objection, Blue Ridge shows the Court as follows:

**Introduction**

1.      Aerosol Packaging, LLC, a Georgia limited liability company, d/b/a Aerosol Specialties ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code, 11 U.S.C. §§ 101, et seq. (the "Bankruptcy Code") in the United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division ("Court"), case number 06-67096 ("Case") on June 21, 2006 (the "Petition Date"). Debtor remains in possession of collateral and assets under Sections 1107 and 1108 of the Bankruptcy Code.

2.      Blue Ridge is listed on Schedule D as holding a valid, undisputed secured

claim in the amount of $2,315,966.00. On September 14, 2006, Blue Ridge filed its proof of claim asserting a claim in the amount of $3,557,696.00 comprised of a secured claim in the amount of $3,424,642.00 and an unsecured claim in the amount of $133,054.00 ("Claim"). Blue Ridge's Claim is secured by a blanket lien on substantially all of the Debtor's assets.

3.      In addition to Blue Ridge, Debtor listed Wachovia Bank, N.A. ("Wachovia") and Badger Capital I, LLC ("Badger") on Schedule D as holding secured claims in the amount of $2,450,000.00 and $234,303.00 respectively. Blue Ridge's Claim is apparently subordinate to the secured claim of Wachovia.

4.      On August 9, 2006, the Court entered a final order (the "Priming Order") authorizing the use of cash collateral and providing adequate protection for secured creditors. The Court authorized the priming of the liens asserted by Wachovia, Blue Ridge and Badger in favor of Harbert Private Equity Fund II, LLC ("Harbert"). Pursuant to the terms and conditions of the Priming Order, the Court capped the amount of debtor-in-possession financing at $1,000,000.00 pending the filing of an assert purchase agreement executed by and between the Debtor and Harbert. Upon the filing of an asset purchase agreement, the Debtor is authorized to access an additional $1,000,000.00 in debtor-in-possession financing from Harbert.

5.      As of the filing of this Objection, the Debtor has not filed an asset purchase agreement.

### Disclosure Statement and Plan of Reorganization

6.      On August 2, 2006, Debtor filed its chapter 11 plan of reorganization ("Initial Plan").

7.      On September 29, 2006, approximately seven (7) weeks after the filing of

2

the Initial Plan, Debtor filed its First Amended Plan of Reorganization ("Amended Plan")

and its Disclosure Statement for Debtor's First Amended Plan of Reorganization

("Disclosure Statement").

8.      On October 2, 2006, the Court entered an order and notice of assignment of

hearing ("Disclosure Statement Notice") wherein, the Court scheduled a hearing to consider

approval of the Disclosure Statement for November 8, 2006 and established October 30,

2006, as the deadline for filing objections to the Disclosure Statement.

9.      As set forth in Section VII Paragraph A of the Disclosure Statement, the

"Plan contemplates the sale of substantially all of the Debtor's assets and business at its

present location in Canton, Georgia to Harbert, or its designee." The Disclosure Statement

further provides that upon closing Harbert/Buyer shall deliver, among other things,

$3,300,000.00 in cash to the Debtor to be utilized for the establishment of the Plan Fund[1].

## Relief Requested

10.      Blue Ridge requests that the Court sustain its Objection and deny approval of

the Disclosure Statement because (a) the Disclosure Statement fails to provide adequate

information as required under Section 1125 of the Bankruptcy Code, and (b) the Amended

Plan is fatally flawed and not confirmable.

## Legal Standards

11.      The purpose of the Disclosure Statement is to provide creditors and other

parties-in-interest "adequate information" in order to determine whether to vote to accept or

reject the Plan. "Adequate information" is defined by Section 1125(a)(1) of the Bankruptcy

Code as follows:

"adequate information" means information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the debtor and the condition of the debtor's books and records, including a discussion of the potential Federal tax consequences of the plan to the debtor, any successor to the debtor, and a hypothetical investor typical of the holders of claims or interests in the class, that would enable such a hypothetical investor of the relevant class to make an informed judgment about the plan, but adequate information need not include such information about any other possible or proposed plan and in determining whether a disclosure statement provides adequate information, the court shall consider the complexity of the case, the benefit of additional information to creditors and other parties in interest, and the cost of providing additional information;

12.     A disclosure statement must provide accurate and reliable information sufficient to enable creditors to make an informed decision about a proposed reorganization plan. *In re Dakota Rail, Inc.,* 104 B.R. 138, 142 (Bankr. D. Minn. 1989); *In re Feretti,* 128 B.R. 16, 18 (Bankr. D.N.H. 1991).

13.     The following factors have been relied upon by courts when determining whether a disclosure statement complies with Section 1125 of the Bankruptcy Code:

(a)     the events leading to the bankruptcy filing;
(b)     a description of assets and their value;
(c)     the company's anticipated future;
(d)     the source of information for the disclosure statement;
(e)     a disclaimer;
(f)     the present condition of the debtor;
(g)     the scheduled claims;
(h)     the estimated return to creditors in the event of a liquidation under Chapter 7 of the Bankruptcy Code;
(i)     the accounting method utilized to produce financial

---

[1] Capitalized terms not otherwise defined herein shall have the meanings set forth in the Amended Plan.

4

> information and the name of the accountants responsible for such information;
>
> (j)    the future management of the debtor;
>
> (k)    the Chapter 11 plan or a summary thereof;
>
> (k)    the estimated administrative expenses, including professional fees;
>
> (1)    the collectibility of accounts receivable;
>
> (m)    financial information, data, valuations, or projections relevant to a creditor's decision to accept or reject the proposed plan;
>
> (n)    information relevant to risks under the plan;
>
> (o)    the actual or projected realizable value from recovery of preferential or otherwise voidable transfers;
>
> (p)    litigation likely to arise in a nonbankruptcy forum;
>
> (q)    tax attributes of the debtor; and
>
> (r)    the relationship of the debtor with affiliates.

*In re Metrocraft Pub/. Svcs.,* 39 B.R. 567, 568 (Bankr. N.D.Ga. 1984) (citing cases); *In re Cardinal Congregate I,* 121 B.R. 760, 765 (Bankr. S.D. Ohio 1990) (citing cases); *see also* 7 Collier on Bankruptcy 15th Ed. Revised ¶ 1125.02[2] (citations omitted).

14.    A disclosure statement generally must contain all relevant information addressing the success or failure of the proposal set forth in a reorganization plan. *In re Cardinal Congregate,* 121 B.R. at 765.

**Objections to Disclosure Statement**

Insufficient Disclosures Regarding Current Management, Officers, and Board of Directors

15.    In Section IV Paragraph D of the Disclosure Statement, Debtor identifies current management, officers, and its board of directors.  The Debtor fails to disclose annual compensation and benefits received by its current management, officers, and board of directors.

16.    Also, the Disclosure Statement fails to provide sufficient information regarding current management and officers and what role, if any, current management will have post-confirmation assuming the proposed sale to Harbert is effectuated.

17.    If officers and management are to be retained by Harbert, assuming confirmation and acquisition, it may adversely affect such individuals' desire or willingness to pursue offers from other third parties. Accordingly, Debtor should disclose whether or not any or all of the current management and officers will be retained by Harbert, assuming confirmation, after its acquisition of the Debtor and the terms and conditions of such persons' retention including, without limitation, annual compensation, benefits, and all non-monetary compensation to be received in connection therewith.

18.    Regarding the Board of Directors, the Debtor identifies the current members of its Board of Directors; however, the Disclosure Statement fails to disclose whether or not any or all of the current members of the Board of Directors will remain as members of the board of directors assuming confirmation and acquisition by Harbert. If members of the Board of Directors will be asked by Harbert to continue to serve as board members of the Reorganized Debtors, such information along with disclosure of monetary and non-monetary compensation must be required. Additionally, Debtor fails to disclosure whether any of its current owners will receive any ownership interest and/or will receive an opportunity to acquire an ownership interest in the company assuming the acquisition is approved.

19.    Disclosure of information concerning the post-confirmation role of officers, directors, management, and members of the Board of Directors including, without limitation, disclosure of monetary and non-monetary compensation to be received in

connection therewith is necessary for creditors to make an informed decision regarding the

Amended Plan.

<u>Information Concerning Holders of Equitable Interests is Insufficient</u>

20.    As set forth in the Disclosure Statement and Amended Plan, Class 7 consists

of the holders of equitable interest. The Amended Plan and Disclosure Statement provide as

follows: "Class 7 consists of all Allowed Interests. As of the Effective Date, all Interests,

including all Old Equity Interests, shall receive nothing under the Plan."

21.    Interest is defined by the Amended Plan as follows:

> Interest: Any membership or other equity ownership interest in
> Debtor and all dividends and distributions in respect of such
> membership or interest and all rights, options, warrants, or
> other rights to acquire any membership or other equity
> ownership in Debtor as of the Petition Date.

22.    Old Equity Interests is defined by the Amended Plan as follows:

> Old **Equity Interest:** Every equity security as defined in
> §101(16) of the Bankruptcy Code and any other Interests in
> Debtor as of the Confirmation Date.

23.    The Disclosure Statement fails to adequately identify the treatment of

Allowed Interests. The Disclosure Statement and Amended Plan state that holders of such

Interests will receive nothing under the Plan. However, the Disclosure Statement and Plan

are silent as to whether or not such Interests will be cancelled or whether such interests will

continue in the new company assuming confirmation and acquisition by Harbert.

24.    Section IV Paragraph D of the Disclosure Statement discusses the

ownership of the Debtor. The Debtor is currently owned by Leigh Fragnoli and his wife

Sarah A. Fragnoli. As set forth in the Disclosure Statement, Mr. Fragnoli owns 99.975% of

the Debtor's common units and Ms. Fragnoli owns the remaining .025% of Debtor's common units. The Disclosure Statement further discusses rights Blue Ridge may have to acquire common units upon the execution of certain warrants.

25.     It appears that the interests discussed herein-above in Paragraph 24 qualify for treatment under Class 7 of the Amended Plan. The Disclosure Statement and Amended Plan do not disclose whether or not such Interests will be cancelled. If the current ownership interests of Mr. and Ms. Fragnoli are not cancelled and the owners are permitted to retain their membership interest, the Amended Plan violates the absolute priority rule. *See Bank of America Nat'l Trust & Savings Ass'n. v. 203 N. LaSalle St. Partnership,* 526 U.S. 434, 199 S.Ct. 1141, 143 L.Ed. 2nd 607 (1999); *see also In re Birdneck Apts. Assocs. II, L.P.,* 156 B.R. 499 (Bankr. E.D. Va. 1993).

26.     It should be made clear to creditors whether under the Amended Plan holders of such Interests will retain such interests or whether such interests will be cancelled upon confirmation. Moreover, it should be disclosed whether current officers, managers, directors, and owners will receive the right to purchase and/or acquire an ownership interest in company, assuming confirmation and acquisition by Harbert.

<u>Information Concerning the Separate and Preferential Treatment of Forbearance Vendors is Insufficient</u>

27.     As set forth in the Disclosure Statement, the Amended Plan proposes to separately classify the claims of trade vendors based upon whether or not such trade vendors entered into a prepetition forbearance agreement with the Debtor.

28.     Class 5 consists of trade creditors that entered into prepetition forbearance agreements with the Debtor. Class 6 consists, in part, of trade vendors that did not enter into

prepetition forbearance agreement with the Debtor.

29.    As set forth in the Disclosure Statement, Debtor intends to either assume or reject the forbearance agreements. If the forbearance agreements are assumed, such vendors will eventually receive payment in full of their Allowed Class 5 Claim. If Debtor rejects a forbearance agreement, such vendor will be treated as a Class 6 General Unsecured Creditors.

30.    The Disclosure Statement fails to provide any legal basis for classifying the forbearance agreements as executory contracts which can be either assumed or rejected under Section 365 of the Bankruptcy Code. Debtor should be required to establish that the Forbearance Agreement constitute executory contracts thus, justifying the preferential treatment set forth under the Amended Plan.

31.    Additionally, the Disclosure Statement fails to (a) disclose the identity of the Forbearance Vendors, (b) identify the nature of the relationship between the Debtor and the Forbearance Vendors including, without limitation, whether or not the Debtor has any ownership interest in said vendors or whether or not such vendors may be affiliates of the Debtor, (c) disclose the criteria utilized by the Debtor when entering into forbearance agreement with vendors (i.e. on page 21 of the Disclosure Statement the Debtor refers to the Forbearance Vendors as critical vendors necessary to maintain supplies, so further disclosure concerning why such vendors have been deemed critical is pertinent and is relevant to determining how and why such vendors are receiving preferential treatment and whether the Debtor can establish a legal basis for the proposed treatment); and (d) disclose whether or not all vendors were given an opportunity to enter into prepetition forbearance agreements.

32.     As set forth in the Disclosure Statement and Amended Plan, Debtor's proposed treatment of the Forbearance Vendors, who hold general unsecured claims, is not only preferential to non-Forbearance Vendors but also to Blue Ridge. When evaluating whether to vote to accept or reject the Amended Plan, Debtor should disclose its legal and factual basis for the preferential treatment of the Forbearance Vendors.

Disclosure Statement Fails to Adequately Address and Discuss Issues Concerning the Assumption and/or Rejection of that Certain Non-Residential Real Property Lease by and Between the Debtor and Misty Spray and Potential Litigation Between the Parties.

33.     At the October 4, 2006 hearing on Debtor's motion to extend time to assume or reject non-residential real property lease, Debtor's counsel advised the Court and parties in attendance that serious issues concerning the construction and ventilation of the premises existed. Debtor's counsel further represented to the Court that based upon recent appraisals the cost to repair the facility could range between $600,000.00 to $1,000,000.00.

34.     The Disclosure Statement only briefly touches on the issues between the Debtor and the Landlord. The Disclosure Statement fails to discuss Debtor's plan for resolving such issues including, without limitation, whether or not an adversary proceeding will be commenced. Moreover, Debtor fails to disclose the impact upon the Amended Plan and the asset sale contemplated thereunder if the Debtor is required to pay for the needed repairs.

35.     Debtor fails to disclose how such repairs would be funded and the effect that would have upon the distribution schedule proposed in the Amended Plan. Additionally, Debtor fails to disclose whether Harbert would be willing to effectuate the sale if Debtor is determined to be liable for making the repairs and what affect that would have upon the purchase price. Not only is this information not fully disclosed, issues with

the Landlord raises serious feasibility issues which raise serious, if not potentially fatal confirmation issues.

> The Disclosures Concerning Plan Fund and the Distributions Contemplated Thereunder are Insufficient Due to Failure to Adequately Disclose the Affect that the Potential Cure and/or Rejection Claims, Claims of Secured Creditors that Vote to Reject the Plan Have Upon the Plan Fund, and Costs to Repair the Facility

35.     Section VIII of the Disclosure Statement sets forth an estimated distribution schedule from the Plan Fund. As set forth on the distribution schedule, Debtor estimates approximately $460,000.00 will be available to disburse to general unsecured creditors that comprise the Class 6 category. The estimated payout to Class 6 Claims is $395,000.00 leaving a balance of $65,000.00.

36.     The proposed distribution schedule fails to identify the effect proposed cure claims will have upon the Plan Fund. As set forth in Section VII, Paragraph E, Subparagraph 2, cure claims will be paid from the Plan Fund. Debtor is required to file a list of all executory contracts and unexpired leases it intends to assume five (5) Business Days prior to the scheduled Confirmation Hearing. Presumably at such time Debtor will list the cure claims due and owing to each respective entity. However, that is not disclosed.

37.     Additionally, the executory contracts and unexpired leases that are rejected will be treated as Class 6 Claims. Therefore, the cure claims and the rejection claims will diminish the amount disbursed to each creditor from the Plan. Also, Debtor should be required to disclose the effect upon the Plan Fund and any resulting distributions of Debtor, and that the Debtor is liable for any or all of the repair costs to the Facility.

38.     The disbursement schedule set forth in the Disclosure Statement also fails to illustrate the effect a rejection of the Plan by Wachovia, Blue Ridge, Geneva, and/or Badger

would have upon: (a) the Plan Fund, and (b) disbursements to Class 6 Creditors. In the event that Wachovia, Blue Ridge, Geneva, and/or Badger reject the Amended Plan, the alternative treatment for such creditors is generally as follows. Each Allowed Claim will be bificurated into secured and unsecured portions. In the event one or all of such creditors reject the Amended Plan, the Disclosure Statement should provide a disbursement schedule that sets forth the Debtor's estimate regarding each entities' Allowed Claim broken down into secured and unsecured portions. The disbursement schedule for the Plan Fund should then illustrate the effect on the Plan Fund if such creditors reject the treatment proposed under the Amended Plan.

39.     The Disclosure Statement must clearly disclose the effect (a) the Cure Payments, (b) the rejection claims, and (c) the claims arising if Wachovia, Blue Ridge, Geneva, and/or Badger reject the Amended Plan will have upon the distributions to Class 6 creditors, and (d) the effect upon the Plan Fund if Debtor is determined to be liable for any repair costs to the Facility. Moreover, any voting deadline should be after the Debtor files its list of unexpired leases and executory contracts it intends to assume and/or reject.

40.     Debtor should be required to circulate a revised Plan Fund distribution prior to any voting deadline on the Amended Plan to reflect the change in estimated distribution to Class 6 Creditors based upon the Cure Payments, the rejection claims, and the estimated unsecured claims of Wachovia, Blue Ridge, Geneva and Badger.

<u>The Financial Information Provided is Insufficient</u>

41.     Under the Amended Plan, Debtor proposes to satisfy Blue Ridge's Claim by the issuance of a non-interest bearing contingent three (3) year promissory in a principal amount determined based upon a percentage of Blue Ridge's secured claim and Geneva's

unsecured claim. If Blue Ridge does not vote to accept the Amended Plan, the alternative treatment provides for payment of its Allowed Secured Claim payable quarterly in 84 equal monthly payments with interest accruing at 9% ("Alternative Treatment").

42.     The Disclosure Statement fails to provide any financial information or projections establishing Harbert's ability to fund the Contingent Note or the Alternative Treatment. While other creditor's claims are satisfied from the Plan Fund, satisfaction of Blue Ridge's Claim is dependent upon the post-acquisition operations of Harbert. Accordingly, the Disclosure Statement should contain sufficient financial information illustrating Harbert's ability to satisfy Blue Ridge's Claim based upon its post-acquisition operations.

<u>Disclosure Statement Provides Insufficient Information Regarding Debtor's Post-Petition Efforts to Market the Business</u>

43.     The Amended Plan contemplates the sale of substantially all of Debtor's assets. Generally, such sales are handled in accordance with Section 363 of the Bankruptcy Code which makes offers to purchase assets subject to higher or better offer. 11 U.S.C. §363. Debtor is attempting to avoid the requirements of Section 363 of the Bankruptcy Code by providing for the sale of its assets through confirmation of the Amended Plan.

44.     The result of this transaction is that the terms and conditions of the transaction with Harbert are not subject to a competitive bidding process. Additionally, Debtor is circumventing the Bankruptcy Code by avoiding payment of the full proceeds received from Harbert to satisfy secured claims.

45.     The Disclosure Statement should provide information concerning Debtor's efforts to market its assets and pursue opportunities with parties other than Harbert. Debtor

should be required to establish that it pursued any and all opportunities prior to settling upon the Harbert transaction. Upon information and belief, prior to the bankruptcy filing several other offers were under consideration by the Debtor. Information regarding these potential offers and whether the interested parties have or will be contacted and provided an opportunity to submit higher or better offers should be disclosed. Moreover, Debtor should: (a) advise why such offers were not pursued, and (b) compare the potential return to creditors versus the return proposed under the transaction with Harbert.

46.    Debtor should be required to expose this transaction to the market. Harbert's offer should be subject to a competitive bidding process. The Disclosure Statement should articulate the procedure for submitting a competitive bid. Debtor should be required to provide any and all documentation required to complete due diligence. Any and all proposed break-up fees sought by Harbert must be fully disclosed.

**The Plan is Not Confirmable**

47.    A court should exercise its discretion and refuse to consider and deny approval of a disclosure statement that describes a plan that is "fatally flawed", thus rendering confirmation "impossible". *In re Cardinal Congregate 1,* 121 B.R. 760, 764 (Bankr. S.D. Ohio 1990); *In re Monroe Well Service, Inc.,* 80 B.R. 324 (Bankr. E.D. Pa. 1987); In re Pecht,* 57 B.R. 137 (Bankr. E.D. Va. 1986). While the question of whether a plan meets the confirmation requirements set forth in Section 1129 of the Bankruptcy Code is generally reserved for a confirmation hearing, when a plan's inadequacies are obvious, such issues should be addressed at the disclosure statement stage. *In re Unichem Corp.,* 72 B.R. 95, 98 (Bankr. N.D. Ill. 1987) *aff'd* 80 B.R. 448 (N.D. Ill. 1987). Courts should disapprove disclosure statements when the proposed plan it describes displays

14

"fatal facial deficiencies or the stark absence of good faith." *See In re Phoenix Petroleum Co.,* 278 B.R. 385, 394 (Bankr. E.D. Pa. 2001) ("if a disclosure statement describes a plan that is [non-confirmable], the court should exercise its discretion and refuse to approve the disclosure statement"); *In re Main Street AC, Inc.,* 234 B.R. 771, 775 (Bankr. N.D. Cal. 1999) ("a court may decline to approve a disclosure statement, even if it provides adequate information, when the plan could not possibly be confirmed"); *In re Allied Gaming Mgmt., Inc.,* 209 B.R. 201, 202 (Bankr. W.D. La. 1997) ("a disclosure statement should not be approved if the proposed plan, as a matter of law, cannot be confirmed") *In re Eastern Maine Elec. Coop., Inc.,* 125 B.R. 329, 333 (Bankr. D. Me. 1991); *See In re Dakota Rail, Inc.,* 104 Bankr. 138, 144 (Bankr. D. Minn. 1989) ("allowing a nonconfirmable plan to accompany a disclosure statement is a misrepresentation."); *In re Unichem Corp.,* 72 B.R.. at 98.

48.    In order for a court to confirm a plan, the plan must comply with Section 1129 of the Bankruptcy Code.

49.    Blue Ridge is mindful that such objections are normally raised at a plan confirmation hearing; however, the Amended Plan is not confirmable. Therefore, Blue Ridge respectfully requests that the Court take this opportunity to review the Amended Plan and deny approval of the Disclosure Statement. In the event the Disclosure Statement is approved, Blue Ridge reserves the right to object to confirmation.

<u>Violation of Section 1129(a)(5) of the Bankruptcy Code</u>

50.    The Amended Plan violates Section 1125(a)(5) of the Bankruptcy Code by failing to disclose whether any current officers, managers, directors, or insiders will be employed or otherwise retained by Harbert and fails to disclose any monetary and

non-monetary compensation to be received by such individuals.

### Violation of Section 1129(a)(1) of the Bankruptcy Code

51.     The Amended Plan improperly classifies claims in violation of Section 1122 of the Bankruptcy Code; thereby violating Section 1129(a)(1) of the Bankruptcy Code.

52.     Section 1122 of the Bankruptcy Code governs the classification of claims and provides, in pertinent part, as follows:

> ...a plan may place a claim... in a particular class only if such claim... is substantially similar to other claims... of such class. 11 U.S.C. §1122(a).

53.     The Fifth Circuit has made clear that claims which are substantially similar or those that share common rights against the estate are required to be placed in the same class. *In re Greystone III Joint Venture, 995* F.2d 1274, 1278 (5th Cir 1991), *cert. denied, 506* U.S. 821 (1992). Moreover, substantially similar claims may not be separately classified for the sole purpose of gerrymandering a favorable vote for a plan of reorganization. Id.

54.     The Amended Plan improperly classifies the claims of Blue Ridge and Geneva. Class 3A consists of the Allowed Secured Claims and any other Allowed Unsecured Claims held by Blue Ridge. Class 3B consists of the Allowed Unsecured Claim of Geneva and any other claims arising under the Geneva Loan Documents.

55.     The claims asserted by Geneva are unsecured. The Claims asserted by Blue Ridge are secured. The claims of Blue Ridge and Geneva are improperly classified and treated as substantially similar claims by the Debtor.

16

56.    The Amended Plan provides for each entity to receive a percentage of the Contingent Note based upon each entities' percentage of the aggregate amount due of the Class 3A and Class 3B claims. Debtor created two subcategories to disguise the fact that the claims of Blue Ridge and Geneva, which are by their very nature substantially different in their nature and the rights associated therewith, are essentially being classified and treated for purposes of the Amended Plan as one class of claims.

57.    Debtor's separate classification and treatment of Forbearance Vendors violates Section 1122(a) of the Bankruptcy Code. Moreover, separate classification and creation of the Forbearance Vendor class is an improper attempt to manipulate and create an impaired class of creditors that will likely vote to accept the Amended Plan. Based upon the limited information provided by the Debtor, the Forbearance Vendors are holders of prepetition general unsecured claims. Such vendors entered into an agreement, categorized as a Forbearance Agreement. As a result of entering into said agreement, said vendors will now receive payment in full of their prepetition claims, if their respective Forbearance Agreements are assumed.

58.    The above classification raises significant issues. The only difference between the Forbearance Vendors and the General Unsecured Creditors is the existence of the Forbearance Agreements. As set forth herein-above, Debtor has provided absolutely no information concerning the Forbearance Vendors and has not provided any legal basis for the preferential treatment such vendors are receiving.

59.    The Amended Plan treats the Forbearance Agreements as executory contracts; however, Debtor has not filed or disclosed the content of such agreements. It is difficult to imagine how a standard forbearance agreement could be construed as an

executory contract. By creating this preferred class of unsecured creditors, who will receive payment in full of their claim, Debtor has intentionally created a class of creditors that will vote for the Amended Plan.

60.     Debtor fails to specify how the funds advanced by Harbert will be repaid under the Amended Plan. Harbert's claim is not addressed. The omission of Harbert's claim is significant. The Amended Plan must address Harbert's claim and failure to do so constitutes a violation of Section 1123 of the Bankruptcy Code.

<u>Violation of Section 1129(b)(2) of the Bankruptcy Code</u>

61.     The proposed treatment of the Blue Ridge Secured Claim violates Section 1129(b)(2) of the Bankruptcy Code which provides, in pertinent part, as follows:

> For the purpose of this subsection, the condition that a plan be fair and equitable with respect to a class includes the following requirements:
> (A)     With respect to a class of secured claims, the plan provides-
> > (I) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the debtor or transferred to another entity, to the extent of the allowed amount of such claims; and
> > (II) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, or a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property;
> > (ii)     for the sale, subject to section 363(k) of this title, of any property that is subject to the liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (i) or (iii) of this subparagraph; or
> > (iii)     for the realization by such holders of the indubitable equivalent of such claims.

62.    The Amended Plan proposes a sale of substantially all of the Debtor's assets and operations to Harbert. The purchase price of Debtor's assets is $3,300,000.00. Wachovia asserts a blanket lien on substantially all of the Debtor's assets and a secured claim of approximately $2,800,000.00. Blue Ridge asserts a blanket lien on substantially all of the Debtor's assets, subordinate to Wachovia's, and a secured claim in excess of $3,300,000.00. Such claims are deemed allowed in the amounts filed. See 11 U.S.C. § 502.

63.    When collateral is sold, the value of the collateral should be based upon the purchase price received in connection with the sale, assuming the terms and conditions of sale are fair and were arrived at through arms-length negotiations. *Ford Motor Credit Co. v. Dobbins,* 35 F.3d 860, 870 (4th Cir. 1994); *Romley v. Sun Nat'l Bank (In re Two "S" Corp.)* 875 F.2d 240, 244 (9th Cir. 1989).

64.    Based upon the $3,300,000.00 purchase price, if this sale was effectuated in accordance with the Bankruptcy Code and Harbert's debtor-in-possession loan was converted to equity as set forth in the Disclosure Statement but not the Amended Plan, Wachovia's claim would be paid in full and there would be approximately $500,000.00 remaining to satisfy the secured obligation of Blue Ridge. If Wachovia accepts the proposed treatment under the Amended Plan and reduces its secured claim to $1,800,000.00 there would be approximately $1,500,000.00 remaining in proceeds that would be subject to the security interest and lien asserted by Blue Ridge.

65.    Thus, the secured claim asserted by Blue Ridge ranges from $500,000.00 to $1,500,000.00. The Amended Plan unfairly discriminates against Blue Ridge.

66.    Blue Ridge holds a secured claim. The Amended Plan proposes to

terminate the liens asserted by Blue Ridge. Therefore, the Amended Plan does not comply with Section 1129(b)(2)(A)(i) and (ii) of the Bankruptcy Code.

67.    The Amended Plan fails to provide Blue Ridge with an "indubitable equivalent" as set forth in Section 1129(b)(2)(A)(iii) of the Bankruptcy Code. Indubitable equivalent is not defined but courts considering its meaning have interpreted the phrase to mean that a plan "must provide adequate assurance of the safety of a secured creditor's loan principal." *In re Rodney Keller,* 157 B.R. 680, 684 (Bankr. E.D. Wa. 1993) (citing *In re American Mariner Indus., Inc.,* 734 F.2d 426, 433 (9th Cir. 1984)).

68.    The Amended Plan proposes that Harbert will pay Blue Ridge $289,092.00 (the "Blue Ridge Plan Payment"). The Blue Ridge Plan Payment is substantially less than the amount of Blue Ridge's secured claim which as set forth herein-above ranges between $500,000.00 to $1,500,000.00 at a minimum. The Blue Ridge Plan Payment fails to "provide adequate assurance of the safety of a secured creditor's loan principal."

69.    Therefore, the Amended Plan blatantly violates Sections 1129(a) and (b)(2) of the Bankruptcy Code.

<u>The Amended Plan Improperly Releases Third Party Guarantors and Improperly Modifies the Contractual Rights of Blue Ridge and Non-Debtor Entities</u>

70.    Under the Amended Plan, Debtor seeks approval to require Blue Ridge to (a) release the Blue Ridge Guaranties; (b) assign the Fragnoli Life Insurance Policy back to Debtor; and (c) waive any claims it may have against any Person with respect to the Blue Ridge Claim, including any claims Blue Ridge may hold under the Blue Ridge Guaranties. The proposed release and modification of Blue Ridge's contractual rights with third parties is impermissible.

71.     Section 524(e) of the Bankruptcy Code provides that the "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt." 11 U.S.C. §524(e).

72.     In very rare circumstances some courts have allowed releases of non-debtor third party under Section 105 of the Bankruptcy Code. Courts approving non-debtor releases have considered the following factors: (a) whether there is identity of interest between the debtor and the third party which would result in the depletion of the estate's assets; (b) whether the non-debtor has contributed substantial assets to the reorganization; (c) whether the injunction is essential to reorganization; (d) whether the impacted class has voted to accept the plan; (e) whether the plan provides for payment of all or substantially all of the class affected by the injunction; (f) whether the plan provides an opportunity for those claimants who choose not to settle to recover in full; and (g) whether the bankruptcy court made a specific factual finding on the record supporting its conclusion. *In re Dow Corning Corp.,* 280 F.3d 648 (6th Cir. 2002); *In re Continential Airlines*, 203 F.3d 203 (3rd Cir. 2000); *In re Specialty Equip. Co., Inc.,* 3 F.3d 1043 (7th Cir. 1993).

73.     A debtor must demonstrate the existence of unusual circumstances and that the releases are fair and necessary. *In re Transit Group, Inc.,* 286 B.R. 811, 818 (Bankr. M.D. Fl. 2002). An example of unusual circumstances is the establishment of a large fund to pay claims or giving creditors a choice to either pursue or not pursue third parties *See e.g. In re Dow Corning Corp.,* 280 F.3d at 648 (debtor's insurer created a $2.35 billion fund to pay product liability claims; *In re A.H. Robbins Co., Inc.,* 880 F.2d 694 (4th Cir. 1989) (insurer paid $350 million to establish a fund to pay product liability claims); *In re Drexel Burnham Lambert Group, Inc.,* 960 F.2d 285 (2nd Cir. 1992) (management

21

contributed $300 million to settlement); *In re Specialty Equip. Co., Inc.,* 3 F.3d at 1043

(creditors could choose not to grant the releases and pursue claims against third parties).

74.     Debtor cannot establish that requiring the release of non-debtor entity Mr.

Fragnoli is fair and equitable. Specifically, applying here the factors outlined by the Dow

court, there is nothing which militates in favor of approving the proposed release: (a)

although not clearly addressed in the Disclosure Statement (see paragraph 26 hereinabove),

it does not appear that current ownership interests are continued after acquisition, i.e., there

will be no identity of interest between the non-debtor and any reorganized debtor since

Debtor is selling substantially all of its assets, and thus no concern about possible depletion

of the estate's assets; (b) this case involves a sale not a reorganization, and so the non-

debtors are not making any contribution of assets to the operation of a reorganized debtor;

(c) as there is no reorganization; the injunction is not essential to the viability or operation

of a reorganized entity; (d) while voting has not occurred at this point in time, Blue Ridge

likely will reject the Amended Plan; (e) as illustrated herein-above, the Amended Plan fails

to provide for payment of all or substantially all of Blue Ridge's claim; and (f) the

Amended Plan fails to provide Blue Ridge with an opportunity to recover in full on its

claims through some other means (i.e. through some means other than through pursuing the

non-debtor on the guarantee). Additionally, this bankruptcy case does not involve the

establishment of a large fund by non-debtor entities to fund claims. Clearly, there are no

unusual circumstances justifying (a) the release of non-debtor entities from personal

liability, and (b) the substantial modification of Blue Ridge's contractual rights with non-

debtor entities.

<u>The Amended Plan Violates the Absolute Priority Rule</u>

75.     The Amended Plan does not specifically cancel the equitable interests held by Debtor's current owners. If the current ownership interests of Mr. and Ms. Fragnoli are not cancelled and the owners are permitted to retain their membership interest, the Amended Plan violates the absolute priority rule. *See Khan & Nate 's Shoes No. 2, Inc. v. First Bank of Whitting,* 908 F.2d 1351 (7th Cir 1990); *see also In re Birdneck Apts. Assocs. II, L.P.,* 156 B.R. 499 (Bankr. E.D. Va. 1993).

76.     Interest holders and owners may participate in a reorganization plan upon the contribution of new value that is (a) necessary to the successful reorganization, (b) in the form of "money or money's worth," and (c) "reasonably equivalent in view of all the circumstances to the participation of the stockholder." *Case* v. *Los Angeles Lumber Prod. Co.,* 308 U.S. at 121-22 (1939).

77.     Nothing in the Amended Plan or Disclosure Statement indicates that Mr. and Ms. Fragnoli have or will contribute anything to the Debtor's bankruptcy case.  Retention of ownership interests by Mr. and Ms. Fragnoli violates the absolute priority rule.

### Conclusion

78.     The Disclosure Statement fails to provide "adequate information" as required under Section 1125 of the Bankruptcy Code. Additionally, the Amended Plan is "fatally flawed." Accordingly, the Court should decline to approve the Disclosure Statement.

WHEREFORE, for the reasons stated herein, Blue Ridge respectfully requests that the Court deny approval of the Disclosure Statement.

Submitted this 26th day of October, 2006.

JONES & WALDEN, LLC
 _/s/ M Denise Dotson_
M. Denise Dotson

Georgia Bar No. 227230
21 Eighth Street
Atlanta, GA 30309
(404) 564-9300
ddotson@joneswalden.com

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | | |
|---|---|---|
| **In Re:** | ) | **CHAPTER 7** |
| | ) | |
| **AEROSOL PACKAGING, LLC,** | ) | **CASE NO. 06-67096-mhm** |
| **A Georgia limited liability company,** | ) | |
| | ) | **JUDGE MURPHY** |
| _____Debtor._____ | ) | |

**<u>CERTIFICATE OF SERVICE</u>**

This is to certify that I have this day served a copy of the foregoing via U.S. Mail upon the following:

Office of the US Trustee
362 Richard B. Russell Federal Bldg.
75 Spring Street, SW
Atlanta, GA 30303

Dennis S. Meir
John W. Mills
Colin M. Bernadino
Kilpatrick Stockton LLP

1100 Peachtree St., Suite 2800
Atlanta, GA 30309

Brian Schleicher
Jampol, Schleicher, Jacobs & Pakadakis, LLP
11625 Rainwater Drive, Suite 350
Alpharetta, GA 30004

This 26th day of October, 2006.

JONES & WALDEN, LLC

*/s/ M Denise Dotson*
M. Denise Dotson
Georgia Bar No. 227230
21 Eighth Street
Atlanta, GA 30309
(404) 564-9300
ddotson@joneswalden.com

25