UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| AEROSOL PACKAGING, LLC, | ) | CASE NO. 06-67096-MHM |
| | ) | |
| Debtor. | ) | CHAPTER 11 |
| _____ | ) | |

**RESPONSE OF THE OFFICIAL COMMITTEE OF UNSECURED CREDITORS OF AEROSOL PACKAGING, LLC TO DISCLOSURE STATEMENT FOR DEBTOR'S FIRST AMENDED PLAN OF REORGANIZATION**

**COMES NOW** the Official Committee of Unsecured Creditors (the "Committee") in the above-captioned chapter 11 bankruptcy case and, pursuant to 11 U.S.C. §1103(a), files this response to the Disclosure Statement to the Debtor's First Amended Plan of Reorganization, respectfully showing the Court as follows:

1. On June 21, 2006, Aerosol Packaging, LLC, a Georgia corporation (the "Debtor") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code. The Debtor continues to operate its business as debtor in possession pursuant to 11 U.S.C. §§ 1107 and 1108.

2. On June 30, 2006, the United States Trustee appointed an Official Committee of Unsecured Creditors for the estate of Aerosol Packaging, LLC. The Committee has been active and has engaged counsel and financial consultants to assist it in performance of its duties pursuant to 11 U.S.C. § 1103.

3. The Committee consists of Summit Packaging (Michael Conway), BWay Corp. (Yolanda Wooley), Ball Aerosol and Packaging f/k/a US Can Corp. (Rob Garside), Temps Excel (Nancy Nollner), and Newman-Green Inc. (Edward Green). Edward Green resigned from the

Committee early on and has not been participating. There are currently four active and participating members who have been diligent in performing the duties of the Committee.

4. On September 29, 2006, the Debtor filed its First Amended Plan of Reorganization (the "Plan") and accompanying Disclosure Statement. The Plan provides for two classes of unsecured claims. Class 5 consists of trade vendors who executed certain forbearance agreements with the Debtor pre-petition and Class 6 consists of trade vendors and other unsecured claims, none of which executed a forbearance agreement with the Debtor pre-petition.

5. Committee members BWay Corp. and US Can Corp. signed forbearance agreements. Committee Members Summit Packaging and Temps Excel did not sign forbearance agreements. In a vote to determine whether the Committee should object to the separate classification and treatment of creditors who signed a forbearance agreement, the Committee vote was evenly split, creating a deadlock regarding whether an objection to the Disclosure Statement (and, ultimately, to the Plan) on the issue of the classification and treatment of claims is necessary or appropriate. Even without the tie vote, it is clear that the Plan as drafted creates an unavoidable conflict between the two classes of unsecured creditors represented on the Committee and the Committee as a whole cannot act without adversely affecting one of the two groups of creditors.

6. Counsel for the Committee reported the conflict on the Committee to the United States Trustee by letter dated October 17, 2006, and requested the United States Trustee to reconstitute the Committee in such a way as to provide appropriate representation of the unsecured creditors in this case. The United States Trustee has not yet acted to resolve the conflict on the Committee.

7. Even without regard to the issue of classification and treatment of forbearance and non-forbearance unsecured creditors, there are a number of other objections that the Committee believes it has a duty to raise in connection with the Court's consideration of the adequacy of information presented by the Disclosure Statement. Such objections are set forth below. All capitalized terms used in this pleading that are not otherwise defined shall have the meanings set forth in the Plan.

8. The Plan is based on the sale of substantially all of the Debtor's assets to Harbert Private Equity Fund II, LLC ("Harbert"). While the Disclosure Statement sets out the terms of the Plan based on the establishment of a Plan Fund from the cash paid by Harbert at closing and assumption of certain liabilities, the Disclosure Statement does not contain any information regarding the terms of an Asset Purchase Agreement ("APA) that will control the asset sale and affect payments to creditors under the plan. Because some of the terms of the APA may affect reserves or may create obligations that will be paid out of the Plan Fund, thereby affecting the estimated distribution to creditors, all relevant terms of the APA should be disclosed in the Disclosure Statement.

9. The Disclosure Statement states that the lessor of the Debtor's Canton facility, Misty Spray, LLC, has pre-petition rent and lease obligations claims against the Debtor in the estimated amount of $598,000. This amount will constitute the lease cure payment that will be owed to the lessor if the Debtor assumes and assigns the lease to Harbert. The Disclosure Statement further discloses that the cure amount will be funded by Harbert as part of the purchase price, if the Debtor assumes the lease and assigns it to Harbert as purchaser and will be held in escrow pending resolution of the Debtor's claims against the lessor concerning the condition of the facility and repairs necessary to resolve certain roofing and ventilation problems.

The Disclosure Statement does not provide information regarding the estimated costs of the repairs to the facility. Nor does it address the lessor's argument that such repairs are the responsibility of the Debtor under the Debtor's triple net lease and, therefore, not subject to set-off against cure amounts. Finally, the Disclosure Statement does not disclose the source of any payments for repairs to the facility that are not able to be set off against the amount escrowed for the lease cure amount. Because the cost and source of funds for repairs may impact the distributions to creditors in this case, the impact of various possible resolutions should be disclosed in the Disclosure Statement.

10. The Disclosure Statement states that the Cure Payments for executory contracts assumed will be paid out of the Plan Fund (other than the possible cure payment to Misty Spray, LLC, in connection with the Debtor's real property lease). The Disclosure Statement provides no information about which contracts might be assumed and assigned and which will be rejected and the Cure Payments that could be owed in connection with assumption and assignment of the contracts. Because the Cure Payments will affect the amount available for distribution to creditors from the Plan Fund, the Disclosure Statement should contain an estimate of the Cure Payments for contracts likely to be assumed and consideration of that amount in the estimation of percentage distribution to various classes of claims.

11. Furthermore, the Disclosure Statement should contain information about rejection damage claims possible for executory contracts likely to be rejected as those claims also have the potential to dilute the payments to creditors under the Plan.

12. The Disclosure Statement reveals that the Debtor will file a list of executory contracts and unexpired leases it intends to assume and assign on or before five (5) days prior to the hearing on confirmation of the Plan. The Committee objects to this proposal as

4

fundamentally unfair.  Assumption or rejection of a contract will naturally affect a creditor's vote for or against the Plan and the Committee submits that the Debtor should be required to file its list of contracts to be assumed and assigned in sufficient time to allow creditors affected by assumption and Cure Payments proposed or by rejection of their contracts to vote to accept or reject the plan **after** learning the fate of their contracts.

13.     The Plan provides for alternative treatment of Wachovia Bank, N.A., Blue Ridge Investors II, L.P., Geneva Associates Merchant Banking Partners I, LLC, and Badger Capital I, LLC., in the event that any of these creditors reject their proposed treatment under the Plan.  In the event that they reject the Plan, the secured amounts of their claims will be allowed as determined by the Bankruptcy Court and any unsecured portions will be treated as Class 6 general unsecured claims.  The Disclosure Statement provides no analysis of the effect of the alternative treatment of these creditors on the general unsecured claims.  Because the alternative treatment is likely to cause significant dilution of Class 6, the Disclosure Statement should contain analysis showing the likely percentage distribution to Class 6 creditors should some or all of these creditors reject the Plan as proposed.

14.     In light of the existing conflict on the Committee and the need for resolution of the conflict for the Committee to participate in meaningful discussions and negotiations with regard to the Disclosure Statement and, ultimately, the Plan, the Committee believes a continuance of the hearing on the Disclosure Statement is necessary and appropriate to provide sufficient time for the United States Trustee to act to resolve the conflict on the Committee.

WHEREFORE, the Committee respectfully requests that the Court continue the hearing on the Debtor's Disclosure Statement until such time as the United States Trustee has addressed the conflict on the Committee as currently appointed and the reformulated Committee has had a

5

meaningful opportunity to review and respond to the Disclosure Statement, and for such other and further relief as may be just and appropriate.

This 26th day of October, 2006.

               SMITH, GAMBRELL & RUSSELL, LLP
               Counsel for the Official Committee of Unsecured
               Creditors of Aerosol Packaging, LLC

               By: */s/ Laura E. Woodson*
                 Laura E. Woodson
                 Georgia Bar No. 775310
               1230 Peachtree Street, NE
               Suite 3100
               Atlanta, GA 30309
               (404) 815-3500

## CERTIFICATE OF SERVICE

       This is to certify that the undersigned has this day served a copy of the foregoing pleading on the following persons by U.S. Mail, postage pre-paid:

Brian L. Schleicher
Robinson, Jampol, Schleicher & Jacobs
11625 Rainwater Drive
Suite 350
Alpharetta, GA  30004

Paul M. Baisier
Seyfarth Shaw LLP
1545 Peachtree Street, NE
Suite 700
Atlanta, GA 30309

Colin M. Bernardino
Kilpatrick Stockton, LLP
1100 Peachtree Street, NE
Suite 2800
Atlanta, GA 30309-4530

David S. Weidenbaum
Office of United States Trustee
362 Richard B. Russell Building
75 Spring Street, S.W.
Atlanta, Georgia  30303

M. Denise Dotson
Jones & Walden, LLC
21 Eighth Street, NE
Atlanta, GA 30309

Mark S. Marani
Cohen, Pollock, Merlin, Axelrod & Small, P.C.
3350 Riverwood Parkway
Suite 1600
Atlanta, GA  30339

This 27th day of October, 2006.

                              /s/ Laura E. Woodson

1230 Peachtree Street, N.E.
Suite 3100
Atlanta, GA 30309
(404) 815-3500

7