## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | **CHAPTER 11** |
| | ) | |
| **AEROSOL PACKAGING, LLC,** | ) | **CASE NO. 06-67096-MHM** |
| **A Georgia Limited Liability Company** | ) | |
| **d/b/a AEROSOL SPECIALTIES,** | ) | |
| | ) | |
| **Debtor.** | ) | |

## PLAN OF LIQUIDATION FILED BY THE
## BLUE RIDGE INVESTORS, II, LP AND
## GENEVA ASSOCIATES MERCHANT BANKING PARTNERS I, LLC

### DECEMBER 20, 2006

### JONES & WALDEN, LLC

**Leon S. Jones**
**M. Denise Dotson**
**21 Eighth Street**
**Atlanta, Georgia 30309**
**(404) 564-9300 Telephone**
**(404) 564-9301 Facsimile**
**Counsel for Blue Ridge Investors, II, LP**

**and**

**George Martin Geeslin**
**Eight Piedmont Center, Suite 550**
**3525 Piedmont Road, N.E.**
**Atlanta, GA 30305-1565**
**(404) 841-3464 Telephone**
**(404) 816-1108 Facsimile**
**Counsel for Geneva Associates Merchant Banking Partners I, LLC**

CORP\1212033.5

# TABLE OF CONTENTS

**Page**

**ARTICLE 1** ............................................................................................................1

    **DEFINITIONS** ..............................................................................1

**ARTICLE 2** ..........................................................................................................16

    **CLASSIFICATION OF CLAIMS AND INTERESTS** ...............16

**ARTICLE 3** ..........................................................................................................18

    **TREATMENT OF ADMINISTRATIVE CLAIMS, PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS** ..............18

**ARTICLE 4** ..........................................................................................................20

    **TREATMENT AND IMPAIRMENT OF CLASSES**................20

**ARTICLE 5** ..........................................................................................................23

    **ALTERNATIVE TREATMENT FOR REJECTING CLASSES** ...............................23

**ARTICLE 6** ..........................................................................................................25

    **EXECUTORY CONTRACTS AND UNEXPIRED LEASES** ...................25

**ARTICLE 7** ..........................................................................................................27

    **MEANS FOR IMPLEMENTATION OF THE PLAN** ...............27

**ARTICLE 8** ..........................................................................................................33

    **TITLE TO PROPERTY**...............................................................33

**ARTICLE 9** ..........................................................................................................34

    **RETENTION OF JURISDICTION** ...........................................34

**ARTICLE 10** ........................................................................................................37

    **INJUNCTION AGAINST INTERFERENCE WITH CONSUMMATION OF THE PLAN** ......................................37

**ARTICLE 11** ........................................................................................................37

    **MISCELLANEOUS PROVISIONS**.............................................37

CORP\1212033.5

# ARTICLE 1

## <u>DEFINITIONS</u>

**1.1 Defined Terms**.  Terms with an initial capital not required by standard capitalization rules are defined terms, and each such term shall have the meaning assigned to it below.

(1)     **Administrative Claim:**  All Claims for the costs and expenses of administering the Case having priority under § 507(a)(2) of the Bankruptcy Code, including, without limitation, costs and expenses allowed under § 503(b) of the Bankruptcy Code, Professional Fee Claims, the actual and necessary costs and expenses of preserving Debtor's bankruptcy estate and operating the business of Debtor, any cure payments due under any Executory Contract and Unexpired Lease that has been assumed pursuant to a Final Order or is being assumed pursuant to the Plan, all fees or charges assessed against the Estate under 28 U.S.C. § 1930, any Claims allowed pursuant to § 507(b) of the Bankruptcy Code, and any other amounts required to be paid to consummate the sale of assets contemplated in this Plan.

(2)     **Affiliate:**  Shall have the meaning assigned to that term in § 101(2) of the Bankruptcy Code.

(3)     **Allowance Date:**  The date a Claim or an Interest becomes an Allowed Claim or an Allowed Interest, respectively.

(4)     **Allowed Administrative Claims:**  Any Administrative Claim that is an Allowed Claim.

(5)     **Allowed Claims:**  Any Claim, Rejection Claim, Professional Fee Claim, Super-Priority Administrative Claim, or Administrative Claim if and to the extent that; (a) such Claim, Rejection Claim, Professional Fee Claim, Super-Priority Administrative Claim, or Administrative Claim has not been withdrawn, paid or otherwise satisfied; (b) (i) a Proof of Claim for any such claim was filed or deemed filed on or before the applicable Claims Filing Bar Date or as directed by the Bankruptcy Court; (ii) if no Proof

CORP\1212033.5

of Claim was filed on or before the applicable Claims Filing Bar Date, Debtor listed such Claim in the Schedules and did not list such Claim as disputed, contingent, or unliquidated (or after the Claims Filing Bar Date a Proof of Claim was filed after any amendment of the Schedules to list the Claim as disputed, contingent, or unliquidated); or (iii) if such Claim is a Professional Fee Claim or an Administrative Claim, an application or request for payment of such Professional Fee Claim or other Administrative Claim was filed on or before the applicable Claims Filing Bar Date; and (c) (i) no objection to the allowance of any such Claim, Rejection Claim, Professional Fee Claim, Super-Priority Administrative Claim, or Administrative Claim has been filed on or before the applicable Claims Objection Bar Date; or (ii) the order allowing such Claim, Rejection Claim, Professional Fee Claim, Super-Priority Administrative Claim, or Administrative Claim has become a Final Order. Unless otherwise specified, the amount of an Allowed Claim shall not include: (1) interest on the principal amount of such Claim, Rejection Claim, Professional Fee Claim, Super-Priority Administrative Claim, or Administrative Claim accruing from and after the Petition Date; (2) punitive or exemplary damages, or any fine, penalty or forfeiture; (3) other amounts specifically excluded pursuant to § 502(b) of the Bankruptcy Code; or (4) any amounts disallowed by a Final Order of the Bankruptcy Court.

(6) **Allowed Interests**: Any Interest if and to the extent that: (a) such Interest has not been withdrawn, paid or otherwise satisfied; (b) (i) a Proof of Interest for such Interest was filed or deemed filed on or before the applicable Claims Filing Bar Date; or (ii) if no Proof of Interest was filed on or before the applicable Claims Filing Bar Date, Debtor listed such Interest on the List of Equity Security Holders and did not list such Interest as disputed, contingent, or unliquidated; and (c) (i) no objection to the allowance of such Interest has been filed on or before the Claims Objection Bar Date; or (ii) an order allowing such Interest has become a Final Order.

(7) **Allowed Priority Non-Tax Claims**: Any Priority Non-Tax Claim that is an Allowed Claim.

CORP\1212033.5

(8)     **Allowed Priority Tax Claims**: Any Priority Tax Claim that is an Allowed Claim.

(9)     **Allowed Professional Fee Claims**: Any Professional Fee Claim that is an Allowed Claim.

(10)     **Allowed Secured Claims**: The Allowed Claim of a Creditor to the extent that it is secured by a validly perfected Lien on property in which Debtor has an interest to the extent permitted by application of §§ 506(a) and (b) of the Bankruptcy Code.

(11)     **Allowed Unsecured Claims**: Any Unsecured Claim that is an Allowed Claim.

(12)     **Assets**: All of the right, title and interest of Debtor in, to and under any and all assets and property, whether tangible, intangible, real or personal, that constitute property of Debtor's Estate, including without limitation: (a) all owned and leased real property; (b) the funds in Debtor's DIP account; (c) all rights of Debtor under any lease or contract; and (d) any and all other claims (excluding Bankruptcy Claims under the Bankruptcy Code) and causes of action, whether or not such actions are disclosed in the Disclosure Statement.

(13)     **Asset Purchase Agreement**: The Asset Purchase Agreement to be entered into by and between Debtor and Buyer, under which Buyer will purchase substantially all of the Assets and business of Debtor as provided in the Plan.

(14)     **Badger Capital:** Badger Capital I, LLC, a North Carolina limited liability company.

(15)     **Badger Capital Claim**: The Allowed Claim of Badger Capital arising under the Badger Capital Loan Documents or otherwise in existence and in favor of Badger Capital as of the Petition Date, and asserted by Badger Capital against Debtor or the Estate.

(16)     **Badger Capital Loan Documents**: (a) Those certain: (i) Replacement Promissory Note dated July ____, 2005 in the original principal amount of $250,389.40

3

executed by Debtor in favor of Badger Capital; (ii) Security Agreement dated May 16, 2005 executed by Debtor in favor of Badger Capital; (iii) Amendment to Security Agreement dated July ____, 2005 executed by Debtor in favor of Badger Capital; and (iv) all UCC financing statements executed by Debtor in favor of Badger Capital; and (b) any and all ancillary documents and agreements executed by any Person in conjunction with any of the foregoing or the Badger Capital Claim asserted by Badger Capital in this Case against Debtor or its Estate.

**(17)    Ballot Due Date**: The date set by the Bankruptcy Court as the deadline by which ballots shall be received for purposes of voting to accept or reject the Plan.

**(18)    Bankruptcy Claims**: All claims, rights and causes of action of Debtor including, without limitation, all preference, fraudulent conveyance and other avoidance claims, rights and causes of action arising under chapter 5 of the Bankruptcy Code.

**(19)    Bankruptcy Code**: The United States Bankruptcy Code, 11 U.S.C. §§ 101, et seq., as amended and effective on the date this Plan is filed with the Bankruptcy Court.

**(20)    Bankruptcy Court, or Court**: The United States Bankruptcy Court for the Northern District of Georgia, Atlanta Division, or any other court of competent jurisdiction exercising jurisdiction over this Case, Debtor, or its Estate, and all proceedings therein.

**(21)    Bankruptcy Recoveries**: Any recoveries of any Bankruptcy Claims by Debtor against any Person.

**(22)    Bankruptcy Rules**: The Federal Rules of Bankruptcy Procedure, as amended and promulgated under 28 U.S.C. § 2075, and the local rules of the Bankruptcy Court, as the same shall be applicable to this Case.

**(23)    Batten Capital**: Batten Capital Group, LLC, a Georgia limited liability company and the Buyer under the Plan.

(24)    **Blue Ridge**: Blue Ridge Investors II Limited Partnership, a Delaware limited partnership.

(25)    **Blue Ridge Claim**: The Allowed Claim of Blue Ridge arising under the Blue Ridge Loan Documents or otherwise in existence and in favor of Blue Ridge as of the Petition Date, and asserted by Blue Ridge against Debtor or the Estate.

(26)    **Blue Ridge Guaranty**: That certain Guaranty Agreement dated June 30, 2000 executed by Fragnoli in favor of Blue Ridge.

(27)    **Blue Ridge Loan Documents**: (a) Those certain: (i) Loan and Purchase Agreement dated June 30, 2000 by and between Debtor, Fragnoli, and Blue Ridge; (ii) Replacement Promissory Note in the amount of $2,550,000 dated March 4, 2005, executed by Debtor in favor of Blue Ridge; (iii) Security Agreement dated June 30, 2000 executed by Debtor in favor of Blue Ridge; (iv) Guaranty Agreement dated June 30, 2000 executed by Fragnoli in favor of Blue Ridge; (v) Limited Collateral Assignment dated June 30, 2000 executed by Debtor in favor of Blue Ridge with respect to the Fragnoli Life Insurance Policy; (vi) Detachable Warrant dated June 30, 2000 executed by Debtor in favor of Blue Ridge; and (vii) all UCC financing statements filed by Debtor in favor of Blue Ridge; and (b) any and all ancillary documents and agreements executed by any Person in conjunction with any of the foregoing, as the same may have been amended or modified, or otherwise evidence the Blue Ridge Claim asserted by Blue Ridge in this Case against Debtor or its Estate.

(28)    **Blue Ridge Subordination Agreement**: That certain Subordination Agreement dated December 5, 2002, executed by Blue Ridge, Debtor and SouthTrust Bank (n/k/a Wachovia), as amended by the Amendment to Subordination Agreement dated October 6, 2003, as further amended by the Second Amendment to Subordination Agreement dated July 20, 2005.

(29)    **Business Day**: A day other than Saturday, Sunday or a "legal holiday" within the meaning of Rule 9006(a) of the Bankruptcy Rules.

**(30)    Buyer**: Batten Capital Group, LLC, a Georgia limited liability company, and/or any other entity that submits the highest or best bid for the Assets as contemplated by Section 7.1 of the Plan.

**(31)    Case**: The chapter 11 bankruptcy case commenced by the filing on of a voluntary petition for relief under Chapter 11 by Debtor on the Petition Date.

**(32)    Cash Payment**: Shall have the meaning set forth in Section 7.1.

**(33)    Causes of Action**: All claims, rights and causes of action of Debtor against any Person, excluding, however, any Bankruptcy Claims.

**(34)    Chapter 11**: Chapter 11 of the Bankruptcy Code.

**(35)    Claim**: Shall have the meaning assigned to that term in § 101(5) of the Bankruptcy Code.

**(36)    Claims Filing Bar Date**: Unless extended by a Final Order, the last date for a Person that is not a governmental unit to file any Proof of Claim with respect to any Claim (other than for Administrative Claims and Rejection Claims) or Proof of Interest with respect to any interest was September 14, 2006, and the last date for a Person that is a governmental unit to file any Proof of Claim (other than for Administrative Claims and Rejection Claims) is 180 days after the Petition Date. The Claims Filing Bar Date for Rejection Claims and for applications or requests for payment of Administrative Claims arising prior to the Effective Date, other than Administrative Claims for goods or nonprofessional services provided to Debtor during the Case in the ordinary course of business, shall be the first Business Day that is twenty (20) days after the Effective Date.

**(37)    Claims Objection Bar Date**: Unless extended by a Final Order, the last date for filing an objection in respect of any Proof of Claim, Proof of Interest, or applications or requests for payment of Administrative Claims arising prior to the Effective Date (other than Administrative Claims for goods or nonprofessional services provided to Debtor during the Case in the ordinary course of business), except for a Proof of Claim asserting a Rejection Claim, shall be the first Business Day that is thirty (30)

6

days following the Effective Date, or in the case of a Claim filed by a governmental unit, thirty (30) days after the Claims Filing Bar Date for governmental units. The Claims Objection Bar Date with respect to Rejection Claims shall be the date that is the later of: (a) the first Business Day that is thirty (30) days following the Effective Date; or (b) the first Business Day that is thirty (30) days following the entry of a Final Order authorizing or compelling Debtor to reject the Executory Contract from which the Rejection Claim arises.

(38)    **Class**: A category, designated in Article 2 of the Plan, of Claims or Interests that are substantially similar to the other Claims or Interests in such category.

(39)    **Classified Claim**: A Claim that is classified into a Class under Article 2 of the Plan.

(40)    **Closing**: Consummation of the transactions contemplated by the Plan following Confirmation occurring not later than eleven (11) days after the entry of the Confirmation Order, or such other date mutually agreed to by Debtor and Buyer.

(41)    **Committee**: The Official Committee of Unsecured Creditors of the Estate of Aerosol Packaging, LLC.

(42)    **Confirmation**: The entry by the Bankruptcy Court of an order confirming the Plan under the provisions of Chapter 11.

(43)    **Confirmation Date**: The date the Bankruptcy Court enters the Confirmation Order.

(44)    **Confirmation Hearing**: The hearing at which the Bankruptcy Court considers Confirmation of the Plan.

(45)    **Confirmation Order**: An order entered by the Bankruptcy Court confirming the Plan under § 1129 of the Bankruptcy Code.

(46)    **Creditor**: Shall have the meaning assigned to that term in § 101(10) of the Bankruptcy Code.

(47)    **Cure Claim**: A Claim based upon Debtor's defaults under an Executory Contract or Unexpired Lease that is assumed pursuant to § 365 of the Bankruptcy Code, determined as of the time the contract or lease is assumed.

(48)    **Debtor**: Aerosol Packaging, LLC.

(49)    **Debtor's Plan**: The Revised Second Amended Plan of Reorganization filed by the Debtor on or about November 21, 2006.

(50)    **Disallowed Claim**: A Disputed Claim: (a) that has been disallowed in a Final Order; or (b) (i) for which no Proof of Claim was filed on or before the applicable Claims Filing Bar Date and that Debtor either: (1) listed in its Schedules as disputed, contingent, or unliquidated; or (2) did not list in its Schedules; or (ii) that is an Administrative Claim for which no application or request for payment of such Administrative Claim was filed on or before the applicable Claims Filing Bar Date.

(51)    **Disallowed Interest**: A Disputed Interest: (a) that has been disallowed in a Final Order; or (b) for which no Proof of Interest was flied on or before the applicable Claims Filing Bar Date and that Debtor either: (i) listed on the List of Equity Security Holders as disputed, contingent, or unliquidated; or (ii) did not list on the List of Equity Security Holders.

(52)    **Disclosure Statement**: Disclosure Statement For the Plan of Liquidation filed by the Official Committee of Unsecured Creditors of the Estate of Aerosol Packaging, LLC, dated December 13, 2006, and all supplements and exhibits that relate thereto that are approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code, as the same may be amended from time to time.

(53)    **Disinterested Person**: Shall have the meaning assigned to that term in § 10l(14) of the Bankruptcy Code.

(54)    **Disputed Claim**: Any Claim: (a) that Debtor listed in its Schedules as disputed, contingent or unliquidated; (b) that Debtor did not list in its Schedules; or (c) to which an objection has been filed on or before the applicable Claims Objection Bar Date,

8

which objection has not been withdrawn and has not been overruled or denied by a Final Order. For purposes of this provision, an application, motion, complaint or other pleadings or paper filed with the Bankruptcy Court seeking to subordinate or dismiss a Claim, a Rejection Claim or an Administrative Claim shall be deemed an objection thereto.

(55)    **Disputed Claims Reserve**: A segregated, interest-bearing trust account to be established and maintained by the Buyer, at a bank in Atlanta, Georgia into which account the Buyer shall deposit all amounts reserved from distributions provided for under the Plan for the Holders of Disputed Claims in each Class under the Plan in accordance with Article 7, Section 7.4, of the Plan. All amounts on deposit from time to time in the Disputed Claims Reserve and all dividends, interest, and other earnings thereon shall be held in trust for the exclusive benefit of Holders of Disputed Claims that subsequently become Allowed Claims and the Holders of Allowed Claims. All amounts on deposit from time to time in the Disputed Claims Reserve shall be invested in accordance with § 345 of the Bankruptcy Code.

(56)    **Disputed Interest**: An Interest: (a) that Debtor listed on the List of Equity Security holders as disputed, contingent or unliquidated; (b) that Debtor did not list on its List of Equity Security holders; or (c) to which an objection has been filed on or before the Claims Objection Bar Date, which objection has not been withdrawn and has not been overruled or denied by a Final Order. For purposes of this provision, an application, motion, complaint or other pleadings or paper filed with the Bankruptcy Court seeking to subordinate or dismiss an Interest shall be deemed an objection thereto.

(57)    **Distribution Date**: A date selected by the Buyer, in consultation with the Plan Proponent, which shall be no earlier than six (6) Business Days after the Effective Date and no later than the second Business Day that is at least thirty (30) days after the Effective Date. Notwithstanding anything in the Plan to the contrary, the Buyer, upon notice to the Plan Proponent, shall have the right to delay the Distribution Date to take into account the amount necessary to deposit into the Disputed Claims Reserve, or as otherwise necessary to take into account Rejection Claims or any other Claim not yet

9

finally determined by the Bankruptcy Court if, in the reasonable judgment of the Buyer, a Distribution would put any Creditor at risk of not being paid the appropriate amount due to it on account of its Allowed Claim.

(58)    **Distributions**: Payments made in accordance with the treatment provided under the Plan to Classified Claims and Unclassified Claims, after taking into account all Allowed Claims and adequate reserves for: (i) the Disputed Claims Reserve; or (ii) Claims, including Administrative Claims and Professional Fee Claims, not yet authorized or disallowed by Final Order of the Bankruptcy Court.

(59)    **Effective Date**: The date on which the Closing shall occur.

(60)    **Estate**: The estate created under § 541 of the Bankruptcy Code in Debtor's chapter 11 case.

(61)    **Executory Contract and Unexpired Lease**: Any pre-petition executory contract or unexpired lease subject to § 365 between Debtor and any other Person or Persons, including the Real Property Lease, but specifically excluding all of the contracts and agreements entered into by Debtor after the Petition Date and/or pursuant to the Plan.

(62)    **Final Order**: An order or judgment entered by the Bankruptcy Court, or Court, that: (a) has not been reversed, stayed, modified or amended; (b) is not the subject of a pending appeal or motion for review or reconsideration; (c) has not been and may no longer be appealed from or otherwise reviewed or reconsidered; and (d) is final and nonappealable in accordance with Bankruptcy Rule 8002 or any other applicable law or rule.

(63)    **Fragnoli**: Leigh A. Fragnoli, an individual resident of the State of Georgia, and CEO of Debtor.

(64)    **Fragnoli Life Insurance Policy**: That certain $2,000,000 key man life insurance policy owned by Debtor on the life of Fragnoli that has been collaterally assigned by Debtor to Blue Ridge.

(65)  **Geneva**: Geneva Associates Merchant Banking Partners I, LLC, a North Carolina limited liability company.

(66)  **Geneva Claim**: The Allowed Claim of Geneva arising under the Geneva Loan Documents or otherwise in existence and in favor of Geneva as of the Petition Date and asserted by Geneva against Debtor or the Estate.

(67)  **Geneva Loan Documents**: (a) That certain Promissory Note dated December 8, 2005 in the original principal amount of $1,000,000, executed by Debtor in favor of Geneva; and (b) any and all ancillary documents and agreements executed by any Person in conjunction with any of the foregoing or otherwise evidences the Geneva Claim asserted by Geneva in this Case against Debtor or its Estate.

(68)  **Harbert**: Harbert Private Equity Fund II, LLC, a Delaware limited liability company, and the post-petition lender to the Debtor.

(69)  **Harbert DIP Claim**: The Allowed Claim of Harbert arising under the post-petition financing provided to the Debtor pursuant to § 364 of the Bankruptcy Code and various orders of the Bankruptcy Court, secured by a first priority, priming security interest in, and lien on, all of Debtor's assets, senior to the Liens of Wachovia, Blue Ridge, and Badger Capital.

(70)  **Harbert DIP Loan Documents**: Any and all promissory notes, security interests, and ancillary documents and agreements executed by any Person in conjunction with the Harbert DIP Claim.

(71)  **Holder**: The owner of any Claim or Interest.

(72)  **Initial Class 5 Cash Distribution**: The sum of $200,000 payable pro rata to Allowed Class 5 Claims on the Distribution Date under the Plan.

(73)  **Interest**: Any membership or other equity ownership interest in Debtor and all dividends and distributions in respect of such membership or interest and all rights, options, warrants, or other rights to acquire any membership or other equity ownership interest in Debtor as of the Petition Date.

**(74)    Insider**: Shall have the meaning assigned to that term in § 101(31) of the Bankruptcy Code.

**(75)    Landlord**: Misty Spray, LLC, a Georgia limited liability company, and the landlord under the Real Property Lease.

**(76)    Lien**: A mortgage, pledge, judgment lien, attachment, security interest or other encumbrance on any real or personal property, whether voluntary or involuntary, which is unavoidable and enforceable under applicable non-bankruptcy law as of the Confirmation Date.

**(77)    List of Equity Security Holders**: The list of Holders of Interests filed by Debtor in the Case pursuant to Rule 1007(a)(3) of the Bankruptcy Rules, as it may be amended by Debtor from time to time.

**(78)    Old Equity Interests**: Every equity security as defined in § 101(16) of the Bankruptcy Code and any other Interests in Debtor as of the Confirmation Date.

**(79)    Person**: An individual, a corporation, a partnership, a limited liability company, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated organization, a government or any political subdivision thereof or other entity.

**(80)    Petition Date**: June 21, 2006, the date on which Debtor filed its Voluntary Petition for Relief under Chapter 11 of the Bankruptcy Code in the Bankruptcy Court.

**(81)    Plan**: This Plan of Liquidation, dated as of the date on the cover, filed and proposed by Blue Ridge and Geneva, as it may be amended or modified from time to time, including all exhibits and schedules referenced therein.

**(82)    Priority Claims**: All Priority Non-Tax Claims and all Priority Tax Claims.

(83)    **Priority Non-Tax Claims**: All Claims that are entitled to priority pursuant to §§ 507(a) or (b) of the Bankruptcy Code and that are not Administrative Claims or Priority Tax Claims.

(84)    **Priority Tax Claim**:  Any Claim for an amount entitled to priority under § 507(a)(8) of the Bankruptcy Code.

(85)    **Professional Fee Claim**: Any Administrative Claim for compensation or reimbursement of expenses pursuant to §§ 327, 328, 330, 331 or 503(b) of the Bankruptcy Code in connection with the Case.

(86)    **Proof of Claim**: Any written statement filed under oath in the Case by the Holder of a Claim, other than an Administrative Claim, which statement: (a) conforms substantially to Official Form 10; (b) states the amount and basis of such Holder's Claim; and (c) attaches or sufficiently identifies all documentation evidencing or otherwise supporting the Claim.

(87)    **Proof of Interest**: Any written statement filed under oath in the Case by the Holder of an Interest, which statement; (a) states the amount and priority classification of such Holder's Interest; and (b) attaches or sufficiently identifies all documentation evidencing or otherwise supporting the Interest.

(88)    **Real Property**: The facility operated by Debtor located at 189 Etowah Industrial Court, Canton, Georgia 30114.

(89)    **Real Property Cure Amount**: The amount determined to be due and owing to the Landlord under the Real Property Lease that is required to be paid to cure all monetary defaults as permitted by § 365 of the Bankruptcy Code, which as of the date hereof is alleged by Landlord to be approximately $598,000, but is subject to objection and final determination by the Bankruptcy Court.

(90)    **Real Property Lease**: That certain Amended and Restated Lease by and between Landlord and Debtor dated March 29, 2005 relating to the lease of the Real Property by Debtor, as the same may be amended or modified.

13

**(91)    Rejection Claim**: Claims for damages arising as a proximate result of Debtor's rejection of an Executory Contract or Unexpired Lease determined as of the date immediately prior to the Petition Date or as otherwise prescribed under § 365(g) of the Bankruptcy Code.

**(92)    Schedules**:    The schedules of assets and liabilities filed by Debtor pursuant to Rule 1007(b) of the Bankruptcy Rules, as they have and may be amended by Debtor from time to time.

**(93)    Subsequent Class 5 Distributions**:    Semi-annual payments made to Allowed Class 5 Claims over a four (4) year period following the Effective Date of the Plan in an aggregate amount equal to: (a) thirty-three (33%) of the Allowed Claims of Holders of Class 5 Claims who vote to reject the Plan or do not submit a vote on the Plan; and (b) fifty (50%) of the Allowed Claims of Holders of Class 5 Claims who vote to accept the Plan and agree to continue to do business with Buyer under normalized average pre-petition trade terms.

**(94)    Super-Priority Administrative Claim**:    Shall mean a claim that has been provided by an order of the Bankruptcy Court the status of an administrative expense claim having a priority over other administrative expense claims (as provided in such Order), including any administrative claim provided to Harbert pursuant to § 364(c)(1) of the Bankruptcy Code, and Wachovia and Blue Ridge as adequate protection for any diminution in value of interests of Wachovia and Blue Ridge in their respective pre-petition collateral resulting from: (i) the use by Debtor of such pre-petition collateral; (ii) the priming of their security interests and liens in the pre-petition collateral by Harbert pursuant to the post-petition financing Agreements; and (iii) the imposition of the automatic stay pursuant to 11 U.S.C. § 362.

**(95)    Unsecured Claim**: Any Claim that is not: (1) a Super-Priority Administrative Claim; (2) an Administrative Claim; (3) a Priority Claim; (4) an Allowed Secured Claim; or (5) based in whole or in part on the Holder's purchase or ownership of an Old Equity Interest in Debtor.

14

(96)    **Unclassified Claim**: A Claim that is not classified under the Plan, e.g., Administrative Claims, Professional Fee Clams and Priority Tax Claims.

(97)    **Wachovia**: Wachovia Bank, National Association, a national banking association and successor-by-merger to SouthTrust Bank, an Alabama banking corporation.

(98)    **Wachovia Claim**: The Allowed Claim of Wachovia arising under the Wachovia Loan Documents or otherwise in existence in favor of Wachovia as of the commencement of the Case, and asserted by Wachovia against the Debtor or its Estate.

(99)    **Wachovia Guaranties**: Any and all guaranties executed by Fragnoli and/or Sarah Fragnoli in favor of Wachovia or its predecessor South Trust Bank. securing any and all of the Wachovia Claim, or other amounts otherwise owed by Debtor to Wachovia, including: (i) the Commercial Guaranty dated May 2l, 2004 executed by Leigh Fragnoli in favor of Wachovia; and (ii) the Commercial Guaranty dated May 21, 2004 executed by Sarah Fragnoli in favor of Wachovia.

(100)    **Wachovia Loan Documents**: To the extent outstanding and in force or effect as of Confirmation, (a) those certain: (i) Commercial Security Agreement dated December 5, 2002 between Debtor and SouthTrust Bank; (ii) Commercial Security Agreement dated October l, 2003 between Debtor and SouthTrust Bank; (iii) Loan and Security Agreement dated May 21, 2004 between Debtor and SouthTrust Bank; (iv) Amended and Restated Loan and Security Agreement and Note Modification Agreement dated October 18, 2004; (v) Promissory Note dated December 5, 2002 in the original principal amount of $500,000 executed by Debtor in favor of SouthTrust Bank; (vi) Promissory Note dated October 1, 2003 in the original principal amount of $2,250,000 executed by Debtor in favor of SouthTrust Bank; (vii) Promissory Note dated October 1, 2003 in the original principal amount of $232,000 executed by Debtor in favor of SouthTrust Bank; (viii) Promissory Note dated January 26, 2004 in the original principal amount of $250,000 executed by Debtor in favor of SouthTrust Bank; (ix) Promissory Note dated May 21, 2004 in the original principal amount of $3,000,000 executed by Debtor in favor of SouthTrust Bank; (x) Promissory Note dated June 17, 2004 in the

original principal amount of $45,000 executed by Debtor in favor of SouthTrust Bank; (xi) Commercial Security Agreement dated January 26, 2004 between Debtor and Wachovia; (xii) Commercial Security Agreement dated June 17, 2004 between Debtor and Wachovia; (xii) the Wachovia Guaranties; (xiv) Forbearance Agreement and Release dated March 31, 2005 (as amended to the Petition Date); and (xv) all UCC financing statements filed by Debtor in favor of SouthTrust Bank or Wachovia; and (b) any and all ancillary documents and agreements executed by any Person in conjunction with any of the foregoing or otherwise evidences the Wachovia Claim asserted by Wachovia in this Case against Debtor or its Estate, but specifically excluding the Blue Ridge Subordination Agreement.

(101) **Wachovia Payment**: Shall have the meaning set forth in Section 4.3 hereof.

(102) **Wachovia Release**: Shall have the meaning set forth in Section 4.3 hereof.

**1.2 Undefined Terms.**   Terms used in this Plan but not defined above shall have the meanings assigned to them, if any, in the Bankruptcy Code and/or the Bankruptcy Rules.

**1.3 Exhibits.**   All exhibits to the Plan are incorporated by reference and made a part of the Plan as if set forth in full herein.

## ARTICLE 2

## CLASSIFICATION OF CLAIMS AND INTERESTS

In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims have not been classified and are excluded from the following classification of Classes. See Article 3 for a description of the treatment of Administrative Claims and Priority Tax Claims. For the purposes of the Plan, Holders of all other Claims against, or Interests in, Debtor are classified as set forth in Article 2 in accordance with § 1122(a) of the Bankruptcy Code; provided, however, the Claims of Harbert and Wachovia are classified separately as Class 2A and 2B, respectively, and the Claims of Blue Ridge and Geneva are classified separately in Class 3A and Class 3B, respectively, for consistency with the Debtor's Plan.

**2.1 Class 1 - Priority Non-Tax Claims**. Class 1 consists of all Allowed Priority Non-Tax Claims.

**2.2 Class 2A – Allowed Harbert DIP Claim**.  Class 2A consists of the Allowed Secured Claim held by Harbert that is secured by Liens granted pursuant to order of the Bankruptcy Court approving post-petition financing provided by Harbert and any loan documents evidencing the Harbert DIP Claim.

**2.3 Class 2B - Allowed Claims of Wachovia**. Class 2B consists of: (a) the Allowed Claim held by Wachovia that is secured by Liens granted under the Wachovia Loan Documents; and (b) any other Allowed Unsecured Claim, if any, of Wachovia.

**2.4 Class 3A - Allowed Claims of Blue Ridge**. Class 3A consists of: (a) the Allowed Secured Claim held by Blue Ridge that is secured by Liens granted under the Blue Ridge Loan Documents; and (b) any other Allowed Unsecured Claim, if any, of Blue Ridge.

**2.5 Class 3B - Allowed Claims of Geneva**. Class 3B consists of all Allowed Claims held by Geneva that are created under: (a) the Geneva Loan Documents; and/or (b) any other related documents or agreements executed by Debtor in favor of Geneva, including any Allowed Unsecured Claim of Geneva.

**2.6 Class 4 - Allowed Claims of Badger Capital**. Class 4 consists of: (a) the Allowed Secured Claim held by Badger Capital that is secured by Liens granted under the Badger Capital Loan Documents; and (b) any other Allowed Unsecured Claim, if any, of Badger Capital.

**2.7 Class 5 - General Unsecured Claims**. Class 5 consists of all Allowed Unsecured Claims not entitled to priority under the Bankruptcy Code of every kind and description, and not otherwise included in any other Class, including without limitation: (a) all general Unsecured Claims arising out of goods sold or services rendered to Debtor prior to the Petition Date; (b) any and all Rejection Claims; (c) any Allowed Unsecured Claim of Wachovia if Wachovia does not vote in favor of the Plan, and as a result, does not consent to the treatment proposed for it in Section 4.3 and, therefore, the alternative treatment provided for in Section 5.2 is applicable; and (d) any other claim of a Creditor that is not an Unclassified Claim or not otherwise classified under the Plan.

**2.8 Class 6 - Interests.** Class 6 consists of all Allowed Interests.

**2.9 Objection to Classification.**  Any Holder of a Claim or Interest in Classes 1 through 6 that fails to object in writing to the classifications provided in this Plan, and to file such objection with the Bankruptcy Court, and to serve such objection upon counsel to Debtor at least five (5) Business Days prior to the date first set by the Bankruptcy Court for the Confirmation Hearing shall be deemed to have accepted such classification and be bound by the classification as proposed by Debtor in the Plan.

**ARTICLE 3**

**TREATMENT OF ADMINISTRATIVE CLAIMS,
PROFESSIONAL FEE CLAIMS AND PRIORITY TAX CLAIMS**

**3.1 Administrative Claims.**  On the Distribution Date, subject to Section 3.5, each Holder of an Administrative Claim (including any Holder of a Super-Priority Administrative Claim) shall receive cash in an amount equal to the unpaid portion of such Allowed Claim, unless: (a) the Allowed Administrative Claim, including Cure Claims and Super-Priority Administrative Claims, is subject to a Final Order of the Bankruptcy Court authorizing different treatment; (b) the Plan Proponent and such Holder shall have agreed in writing to other less favorable treatment of such Allowed Administrative Claim; or (c) such Administrative Claim, including any Cure Claims and Super-Priority Administrative Claims that may be in dispute, has not yet been approved by the Bankruptcy Court or Court as an Allowed Administrative Claim.

**3.2 Professional Fee Claims.**  On the Distribution Date, subject to Section 3.5, each Holder of a Professional Fee Claim shall receive, except to the extent such Professional Fee Claim has been satisfied by any other source, in full and final satisfaction of such Holder's Allowed Professional Fee Claim, cash in an amount equal to the unpaid portion of such Allowed Professional Fee Claim, unless: (a) the Allowed Professional Fee Claim is subject to a Final Order of the Bankruptcy Court authorizing different treatment; (b) the Plan Proponent and such Holder shall have agreed in writing to other less favorable treatment of such Allowed Professional Fee Claim; or (c) such Professional Fee Claim has not yet been approved by the Bankruptcy Court or Court as an Allowed Professional Fee Claim.

18

**3.3 Priority Tax Claims.**  On the Distribution Date, subject to Section 3.5, each Holder of a Priority Tax Claim shall receive cash in an amount equal to the unpaid portion of such Allowed Priority Tax Claim, unless: (a) the Allowed Priority Tax Claim is subject to a Final Order of the Bankruptcy Court authorizing different treatment; (b) the Plan Proponent and such Holder shall have agreed in writing to other less favorable treatment of such Allowed Priority Tax Claim; or (c) such Priority Tax Claim has not yet been approved by the Bankruptcy Court or Court as an Allowed Priority Tax Claim.  Notwithstanding the foregoing, the Holder of a Priority Tax Claim shall not be entitled to receive any payment on account of any penalty arising with respect to or in connection with the Priority Tax Claim. Any Claim or demand for any such penalty will be subject to treatment in Class 5 but only to the extent such Claim is an Allowed Claim.

**3.4 Full Satisfaction, Discharge and Release**. The payments, distributions and other treatment afforded to Holders of Allowed Administrative Claims, Allowed Professional Fee Claims, and Allowed Priority Tax Claims under this Article 3 shall be in full and complete satisfaction, discharge and release of such respective Allowed Claims.

**3.5 Reserve For Claims Not Allowed at the Distribution Date**. The Plan Proponent shall establish adequate reserves for any Administrative Claim, Professional Fee Claim, or Priority Tax Claim asserted by a party prior to the Distribution Date that has not yet been approved by the Bankruptcy Court and deemed an Allowed Claim against the Estate as of the Distribution Date; provided, no reserve shall prevent the payment of the amounts due under the Plan to the Holders of Classes 2 and 4 if each Class votes in favor of the Plan, respectively. Upon final determination of any such pending claims, any amounts held in reserve and not utilized to pay such Allowed Claims shall be returned to Buyer.  Buyer shall assume responsibility for payment of Professional Fee Claims that become Allowed Claims after Confirmation and for the expenses of the Plan Proponent and its professionals post-Confirmation incurred in connection with performing the duties of the Plan Proponent post-Confirmation.

## ARTICLE 4

## TREATMENT AND IMPAIRMENT OF CLASSES

**4.1 Class 1 - Priority Non-Tax Claims**. Each Holder of an Allowed Claim in Class 1 shall receive: (a) cash in an amount equal to the amount of such Holder's Allowed Claim; or (b) such other less favorable treatment as is agreed upon in writing by the Plan Proponent and the Holder of such Allowed Claim. The distribution set forth in the preceding sentence shall be made on the later of: (i) the Distribution Date; or (ii) the date when such Allowed Claim becomes due and payable according to its terms and conditions.

Class 1 is an unimpaired Class and is conclusively deemed to have voted to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code.

**4.2 Class 2A - Allowed Secured Claim of Harbert**.  To the extent that the Allowed Secured Claim of Harbert has not been paid in full upon its maturity, within five (5) Business Days of the Effective Date, Harbert shall receive cash in the amount of $1,000,000.00. The Plan Proponent and Buyer reserve the right to challenge or object to any and all fees asserted by Harbert as a part of the Harbert DIP Claim.

Class 2A is an unimpaired Class and is conclusively deemed to have voted to accept the Plan pursuant to § 1126(f) of the Bankruptcy Code.

**4.3 Class 2B - Allowed Claim of Wachovia**.  Within five (5) Business Days of the Effective Date, Wachovia shall receive: (i) $1,500,000 in cash in good funds (the "Wachovia Payment"); and (ii) a general release from the Debtor and its Estate of any and all claims that the Debtor or its Estate may have or claim to have against Wachovia as of the Effective Date (the "Wachovia Release"). Wachovia's Liens under the Wachovia Loan Documents shall attach to the Cash Payment to the extent of the Wachovia Payment, and will be automatically released upon the receipt by Wachovia of the Wachovia Payment. Wachovia shall not be entitled to any other recovery on the Wachovia Claim from the Debtor or its Estate, nor shall any portion of the Wachovia Claim be included in any other Class.

20

In addition, as a condition to receiving the treatment provided for Wachovia in this Section 4.3, Wachovia shall, contemporaneously with its receipt of the Wachovia Payment: (a) release any and all security interests it may possess against any of the Assets under the Wachovia Loan Documents; (b) release the Wachovia Guaranties; and (c) provide a general release of any further claims that it may have against any Person with respect to the Wachovia Claim.

If Wachovia does not vote in favor of the Plan (as determined by the ballot recognized by the Bankruptcy Court at the Confirmation Hearing), and consequently does not accept the treatment provided for Wachovia in this Section 4.3, then Wachovia shall receive the alternative treatment set forth in Section 5.2 of the Plan for the Wachovia Claim.

Class 2B is an impaired Class and is entitled to vote on the Plan..

**4.4 Class 3A - Allowed Claims of Blue Ridge**. At the Closing, Buyer shall deliver to Blue Ridge, a junior unsecured subordinate contingent promissory note in the amount of $2,500,000 (the "Blue Ridge Note").  The Blue Ridge Note shall be non-interest bearing and payable in full six (6) years from the date of confirmation.  The Blue Ridge Note shall be convertible to equity at the option of Buyer, in form, structure, and amount acceptable to Buyer in its sole discretion.  If Blue Ridge votes to accept the Plan (as determined by the ballot recognized by the Bankruptcy Court at the Confirmation Hearing), Blue Ridge shall receive at Closing a general release from the Debtor and its Estate of any and all claims that the Debtor or its Estate may have or claim to have against Blue Ridge as of the Effective Date. Debtor shall receive from Blue Ridge a release of any and all security interests under the Blue Ridge Loan Documents.

Class 3A is an impaired Class and is entitled to vote on the Plan.

**4.5 Class 3B - Allowed Claims of Geneva**. Geneva shall receive in satisfaction of its Allowed Claim a five-year bullet maturity unsecured non-interest bearing note in the amount of $400,000.00.   In addition, as a condition to receiving the treatment provided for Geneva hereunder, Geneva shall release any and all security interests it may possess under any of the

Geneva Loan Documents against any of the Assets, if any.  Debtor shall waive and provide a general release of all Bankruptcy Claims and other claims it may have against Geneva.

Class 3B is an impaired Class and is entitled to vote on the Plan.

**4.6 Class 4 - Allowed Claims of Badger Capital**. Within five (5) Business Days after the Effective Date, Badger Capital shall receive a secured promissory note in the amount of its Allowed Secured Claim with principal payable annually over four (4) years with the first payment due one year after confirmation with interest accruing annually at the rate of fourteen (14%) percent payable quarterly in arrears.  Badger's security interest and liens shall continue to the same validity, extent, and priority as existed on the Petition Date.

Class 4 is an impaired class and is entitled to vote on the Plan.

**4.7 Class 5 - General Unsecured Claims**. Each Holder of an Allowed Claim in Class 5 shall receive the following Distributions: (a) the Initial Class 5 Distribution, consisting of a payment on the Distribution Date in cash in an amount equal to such Holder's pro rata share of $250,000 after taking into account adequate reserves being established for all Class 5 Claims that have not been finally determined or otherwise allowed by the Bankruptcy Court as of the Distribution Date; and (b) Subsequent Class 5 Distributions, consisting of: (i) Holders of Class 5 Claims that vote to reject the Plan, or do not submit a vote on the Plan, shall receive annual payments over a four (4) year period from the Effective Date of the Plan equal to thirty-three (33%) percent of such Holder's Allowed Claim; and (ii) Holders of Class 5 Claims that vote to accept the Plan and agree to do business with Buyer under normalized average pre-petition trade terms shall receive annual payments over a four (4) year period from the Effective Date of the Plan equal to fifty (50%) percent of such Holder's Allowed Claim; or (c) such other less favorable treatment agreed upon in writing by the Plan Proponent and the Holder of such Claim. In any case, the Distributions received by Class 5 claimants shall be in full and final satisfaction of any Class 5 Claim held by such respective Holder. Notwithstanding the foregoing, if a Class 5 Claim is not an Allowed Claim as of the Date of any Subsequent Class 5 Distributions, Buyer shall pay within thirty (30) days following Allowance of such Claim all such Distributions to which such Allowed Claim shall have been entitled as of the date of Allowance of the Claim.

22

Class 5 is an impaired Class and is entitled to vote on the Plan.

**4.8 Class 6 - Interests**. As of the Effective Date, all Interests, including all Old Equity Interests, shall receive no Distribution or any other asset of the Estate;  provided, however, the Holders of Interests in the Debtor shall be entitled to retain their Interests in Debtor solely for purposes of winding down its affairs under applicable state law at the conclusion of the Case.

Class 6 is an impaired Class that is conclusively deemed not to have voted to accept the Plan pursuant to § 1126(g) of the Bankruptcy Code.

**4.9 Full Satisfaction, Discharge and Release**.  The Distributions and other treatment afforded to Holders of Allowed Claims and Interests under this Article 4 (or if applicable, the Alternative Treatment under Article 5), shall be in full and complete satisfaction, discharge and release of such Allowed Claims or Interests of the respective classes against the Debtor, its Assets and the Estate.

**4.10    Reserve For Claims Not Allowed at the Distribution Date**.  Notwithstanding anything in this Article 4 to the contrary, the Buyer shall establish adequate reserves for payment of any Classified Claim asserted by a party prior to the Distribution Date that was: (a) objected to by Debtor, the Plan Proponent, or other party in interest, and has not yet been approved by the Bankruptcy Court; or (b) not otherwise deemed an Allowed Claim against the Estate as of the Distribution Date; provided, however, that no reserve shall prevent the payment of the amounts due under the Plan to the Holder of the Class 2B Claim if such Class votes in favor of the Plan; and provided further, that no reserves will be established for Subsequent Class 5 Distributions, which shall be paid all amounts due on account of such Claims within thirty (30) days following such Claim becoming an Allowed Claim as provided in Section 4.7 above.   Upon final determination of any such pending Disputed Claims, any amounts held in reserve and not utilized to pay such Claims, shall be returned to Buyer.

# ARTICLE 5

## ALTERNATIVE TREATMENT FOR REJECTING CLASSES

**5.1 General**.

(a)      In the event that any impaired Class of Creditors or Holders of Interests shall fail to vote to accept the Plan in accordance with § 1129(a) of the Bankruptcy Code, the Plan Proponent hereby requests the Bankruptcy Court to confirm the Plan in accordance with the provisions of § 1129(b) of the Bankruptcy Code. In that event, any Class which is impaired by and does not vote to accept the Plan, and consequently the treatment provided in Article 4 for that Class in accordance with the provisions of § 1126 of the Bankruptcy Code, shall be treated in a fair and equitable fashion and not be discriminated against unfairly, and shall otherwise be treated pursuant to § 1129(b) of the Bankruptcy Code, if so ordered by the Bankruptcy Court at the Confirmation Hearing.

(b)      In particular, the following alternative treatment is offered by Debtor under this Plan in Section 5.2, as being in compliance with § 1129(b) of the Bankruptcy Code for the Allowed Claim of Wachovia, in the event Wachovia does not vote to accept the primary treatment offered under Article 4 of the Plan, but is subject to amendment or modification by the Plan Proponent, or such other treatment as may be ordered by the Bankruptcy Court. For purposes of determining the Allowed Secured Claim of Wachovia, the following procedure will be implemented, subject to such modifications that may be ordered by the Bankruptcy Court:

(1)      A hearing shall be held by the Bankruptcy Court to determine the extent, priority and validity of the Claim and Lien of Wachovia. Debtor shall be entitled to assert, in reduction of the allowance any such Allowed Secured Claim, all rights of Debtor under § 506(c) of the Bankruptcy Code.

(2)      If said Claim is allowed and the Lien is determined to be valid, then Wachovia shall be entitled to an Allowed Secured Claim for the amount determined by the Court pursuant to §§ 506(a) and (b) of the Bankruptcy Code. Any balance of the Allowed Claim in excess of the Allowed Secured Claim shall be deemed an Allowed Unsecured Claim. The Allowed Secured Claim and Allowed Unsecured Claim of Wachovia shall be subject to the alternative treatment set forth in Sections 5.2 below.

**5.2 Alternative Treatment of the Wachovia Allowed Claims.**   In the event that Wachovia does not vote to accept the Plan, and consequently the treatment proposed for it in

24

Section 4.3 of the Plan for its Allowed Claims is not applicable, Wachovia shall receive as alternative treatment under the Plan the following: (a) payment upon confirmation, in good funds, cash in the amount of $800,000.00; and (b) a secured promissory note executed by Buyer in the amount of $2,000,000.00, payable annually in equal installments of $500,000.00 with interest accruing at the rate of 9.25% per annum, payable quarterly in arrears, in full and final satisfaction of its Allowed Secured Claim. In addition, any remaining Allowed Unsecured Claim of Wachovia shall be included as an Allowed Claim in Class 5 and subject to the treatment provided for in Section 4.7. Wachovia will be entitled to a Lien on the Assets of Buyer to secure the promissory note. The Lien for such Allowed Secured Claim of Wachovia, if any, shall maintain the same order of priority as it had as of the Petition Date with respect to any other Creditor holding an Allowed Secured Claim against Debtor who has its Allowed Secured Claim assumed by Buyer pursuant to the Plan.

## ARTICLE 6

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

**6.1 Assumption or Rejection of Real Property Lease**. Buyer shall assume the Real Property Lease upon confirmation of the Plan.  The Buyer shall pay the Real Property Cure Amount to the Landlord to cure any default in existence under the Real Property Lease, the amount of which is subject to determination by the Bankruptcy Court or agreement between the Buyer and the Landlord, as an Administrative Claim pursuant to the terms set forth in Section 3.1 of the Plan.

**6.2  Executory Contracts and Unexpired Leases Not Assumed are Rejected**.

(a)      Attached as **Exhibit A** is a list of the Executory Contracts or Unexpired Leases that the Buyer expressly intends for the Debtor to assume as of Confirmation (and only if the Plan is confirmed) and assign to Buyer at the Closing pursuant to the Plan, and the estimated Cure Claims for each of these parties; the filing of the Plan being deemed a motion to assume such Executory Contracts or Unexpired Leases.  Any Cure Payments required to be paid with regard to each Executory Contract and Unexpired Lease assumed by Debtor shall be paid as an Administrative Expense Claim pursuant to the terms set forth in Section 3.1 of the Plan.

(b)      Attached as **Exhibit B** is a list of the Executory Contracts and Unexpired Leases that Buyer expressly intends for the Debtor to reject as of Confirmation (and only if the Plan is confirmed) to the extent these are Executory Contracts or Unexpired Leases subject to § 365 of the Bankruptcy Code; the filing of the Plan deemed a motion to reject such Executory Contracts and Unexpired Leases. On the Effective Date, except for an Executory Contract or Unexpired Lease that is assumed and assigned pursuant to the Confirmation Order or previously rejected by an order of the Bankruptcy Court, each Executory Contract or Unexpired Lease of every kind and nature, including without limitation all warrants, options or other rights to purchase any equity securities of Debtor, that was entered into by Debtor prior to the Petition Date that has not previously expired or terminated pursuant to its own terms prior to the Effective Date, whether or not it is listed on Exhibit B, will be deemed, and hereby are, rejected pursuant to §§ 365 and 1123(b)(2) of the Bankruptcy Code.

(c)      The Confirmation Order will constitute an order of the Bankruptcy Court approving the assumption and rejection of the Executory Contracts or Unexpired Leases as provided for by this Section 6.2 pursuant to § 365 of the Bankruptcy Code, as of the Effective Date. The failure to list an Executory Contract or Unexpired Lease on Exhibit A or Exhibit B shall not prejudice any party to an alleged Executory Contract or Unexpired Lease (including Debtor) from requesting that the Bankruptcy Court approve the assumption or rejection of such omitted Executory Contract or Unexpired Lease as permitted by §§ 365 or 1123 of the Bankruptcy Code.

**6.3 Bar Date for Rejection Claims**. Each Person who is a party to an Executory Contract or Unexpired Lease that is rejected pursuant to this Article 6, or by a separate Order of the Bankruptcy Court, shall be entitled to file, on or before the applicable Claims Filing Bar Date, a Proof of Claim for a Rejection Claim. Rejection Claims for which no timely Proof of Claim is filed shall be forever barred and shall not be enforceable against Debtor, Buyer, or the Disputed Claims Reserve created pursuant to Section 7.6 below, or any other reserve established pursuant to this Plan. To the extent Rejection Claims initially are Disputed Claims, but subsequently become Allowed Claims, the Buyer shall pay such Rejection Claims in accordance with the Plan as Class 5 Claims, but nothing in this Plan shall constitute a determination that any

26

such rejection gives rise to or results in a Claim or constitutes a waiver of any objections to such Claim by Debtor or any other party in interest.

## ARTICLE 7

## MEANS FOR IMPLEMENTATION OF THE PLAN

**7.1 Establishment of Bidding Procedure and Auction of Assets.**  The Plan Proponents propose that Debtor sell substantially all of its assets at an auction to the entity that submits the highest or best offer.   The Plan Proponents propose that the following procedure be implemented: (a) a hearing to consider confirmation of the Plan shall be held a minimum of sixty (60) days after the Bankruptcy Court enters an order approving the Disclosure Statement; (b) notice of the bidding procedures and auctions shall be provided to all creditors, parties-in-interest, any and all parties that expressed an interest in acquiring the Debtor prior to the Petition Date and/or subsequent to the Petition Date, and published in an acceptable trade magazine; (c) entities that wish to submit a competing bid shall have through and including fifteen (15) days prior to the confirmation hearing to complete due diligence; (d) Debtor shall cooperate fully with all due diligence requests; (e) competing bids must substantially comply with the terms and conditions set forth in this Plan; (f) competing bids must be submitted at least five (5) business days prior to the confirmation hearing; and (g) entities that submit competing bids must establish and provide verification that funds totaling the amount of cash due upon closing are being held in an escrow account and/or other similar account.

**7.2 Sale of the Assets**.  The terms and conditions of the Buyer's initial bid are set forth herein.  The Debtor shall sell substantially all of Debtor's Assets and business to Buyer at the Closing, free and clear of any and all Liens, Claims, encumbrances, and Interests, other than those that are provided for under the Plan. The actual Assets to be acquired by Buyer will be set forth in an Asset Purchase Agreement, with Buyer reserving the right to exclude any asset from the acquisition at any time prior to Closing. To implement the Plan, at the Closing, Buyer shall: (i) deliver cash in the amount equal to $3,850,000.00 (the "Cash Payment") to a segregated Cash Payment Account; (ii) make Distributions as required to Unclassified Claims and the Holders of Allowed Claims in Classes 1, 2A, 2B, and 5, as provided in Sections 3.1, 3.2, 3.3, 4.1, 4.2, 4.3 and 4.7, respectively; (iii) if the alternative treatment provided for in Section 5.2 is applicable,

execute and deliver to Wachovia a secured promissory note for the amount of $2,000,000.00; (iv) execute and deliver to Blue Ridge an unsecured promissory note in the amount of $2,500,000; (iv) execute and deliver to Badger Capital a secured promissory note in the amount of its Allowed Claim; and (v) execute and deliver an unsecured bullet maturity non-interest bearing note to Geneva payable four (4) years after confirmation.   In addition, Buyer shall make Subsequent Class 5 Distributions on a semi-annual basis over a period of four (4) years from the Effective Date of the Plan.

**7.3 Continuation of Committee**.

(a)    The existence of the Committee shall continue following Confirmation for the limited purpose of filing and resolving objections to Claims filed against the Debtor as may be necessary and appropriate and filing and/or pursuing any and all claims, litigation, and causes of action of the Debtor including, without limitation, Bankruptcy Claims.

(b)    The Committee shall have the following powers, duties, and responsibilities, including the authority to perform certain acts in the name of the Debtor (as necessary as its duly appointed agent):

(1)    File and pursue any objections to the allowance of the Claims against the Debtor and any actions precluding a distribution to Creditors, all as allowed by the Plan or the Bankruptcy Court, or Bankruptcy Code, as successor in interest to and in the name of Debtor and any and all claims, litigation, and causes of action including, without limitation, Bankruptcy Claims;

(2)    Employ and have such attorneys, accountants, agents and clerical assistance as may be necessary to perform its duties under the Plan;

(3)    Settle, compromise or adjust by arbitration or otherwise any objections to Claims in favor of or against the Debtor; and

(4)    Exercise any and all powers granted to the Committee pursuant to an Order of the Bankruptcy Court.

(c) Costs and Expenses. The Committee shall not receive compensation for performing its duties but members of the Committee may seek reimbursement of their reasonable out-of-pocket expenses in connection with performance of their duties, which reimbursement shall be an Allowed Administrative Claim upon submission of expense reimbursement requests to the Buyer. Professionals for the Committee shall receive reasonable compensation and reimbursement of expenses, which shall be Allowed Administrative Claims, upon the submission of monthly invoices to Buyer.

(d) Rules of Procedure. The Committee shall prescribe its own rules of procedure, as set forth in its By-Laws.

(e) Termination of Committee. Upon the final resolution of all objections to Claims and other litigation filed by the Committee, the duties, powers and responsibilities of the Committee shall terminate.

**7.4 Continuation of Corporate Existence and Winding Down of the Bankruptcy Estate**. The corporate existence of Debtor will continue after the Closing, but only until such time as the Debtor can be dissolved in accordance with applicable state law. The Debtor shall wind down the Debtor's bankruptcy estate after disbursements provided for by the Plan are made and the Plan has been substantially consummated within the meaning set forth in the bankruptcy Code and in accordance with applicable provisions of the Bankruptcy Code and Bankruptcy Rules.

**7.5 Objections and Establishment of Disputed Claims Reserve**. All objections to Claims shall be filed by the Committee by the Claims Objection Bar Date (and as such date may be extended by the Bankruptcy Court) or shall be forever barred. On the Effective Date, the Buyer shall establish the Disputed Claims Reserve for Disputed Claims in accordance with applicable provisions of the Plan.

**7.6 Delivery of Distributions; Undeliverable Distributions**.

(a)    Subject to Section 7.5(c) and 7.5(d) of the Plan, Distributions to Holders of Allowed Claims shall be made: (i) at the address set forth on the respective Proofs of Claim filed by such Holders: (ii) at the addresses set forth in any written notices of address change delivered

to Debtor after the date of any related Proof of Claim; or (iii) at the address reflected in Debtor's Schedules if no Proof of Claim has been filed and Debtor has not received a written notice of a change of address.

(b)     If the Distribution to the Holder of any Allowed Claim is returned as undeliverable to the Buyer, no further Distribution shall be made to such Holder, and the Buyer shall have no obligation to make any further Distribution to the Holder, unless and until the Buyer is notified in writing of such Holder's then current address. The Buyer shall hold all undeliverable Distributions until such time as a distribution becomes deliverable, subject to Section 7.5(c) of the Plan.

(c)     Any Holder of an Allowed Claim who does not assert a Claim for an undeliverable Distribution within one (1) year after the relevant date the Distribution was made on account of such Claim shall no longer have any claim to or interest in such undeliverable Distribution and shall be forever barred from receiving any Distribution under the Plan and the amount of such undeliverable Distribution shall be made available for Distribution to other Allowed Claims on a pro-rata basis.

(d)     In order to receive a Distribution under the Plan: (i) Creditors claiming a security interest that will not survive the Closing shall deliver to Buyer properly executed UCC termination statements evidencing a release of the Liens provided for in their relevant loan documents; (ii) Creditors with civil suits pending shall deliver to Debtor properly executed dismissals of said suits with prejudice; and (iii) persons or entities holding property or assets of the Estate shall return the same to Debtor for delivery to Buyer. Each and every Creditor who elects to participate in the Distributions under the Plan warrants that he is authorized to accept in consideration of such Holder's Claim against Debtor the Distributions provided for in the Plan and that there are not outstanding commitments, agreements, or understandings, express or implied, that may or can in anyway defeat or modify the rights conveyed or obligations undertaken by such Holder under the Plan.

**7.7 Disputed Claims**.

(a)     No distribution or other payment or treatment shall be made on account of a Disputed Claim unless and until such Disputed Claim becomes an Allowed Claim. No Distribution or other payment or treatment shall be made on account of a Disallowed Claim at any time.

(b)     On or before the Distribution Date, the Buyer shall establish a Disputed Claims Reserve containing the pro rata Distributions to which each Holder of a Disputed Claim would be entitled if its Claim was an Allowed Claim, which shall be computed as if the Holder's Disputed Claim were an Allowed Claim in its face amount.  For the purposes of this provision, the "face amount" of a Claim is: (i) the amount set forth on the Proof of Claim unless the Claim is filed in an unliquidated amount; (ii) if a Proof of Claim has been filed in an unliquidated amount, an amount determined in accordance with Section 7.6(c) of the Plan; or (iii) if no Proof of Claim has been filed, the amount of the Claim listed in the Schedules.

(c)     As to any Disputed Claim for which a Proof of Claim has been filed in an unliquidated amount or for which a Proof of Claim has been filed that denominates the Claim as contingent, the Bankruptcy Court shall, upon motion by the Plan Proponent to be filed on or before the Claims Objection Bar Date, estimate the maximum allowable amount, if any, of such Disputed Claim under § 502(c) of the Bankruptcy Code.  Any Final Order of the Bankruptcy Court that estimates a Disputed Claim pursuant to this Section 7.6(c) irrevocably shall constitute and be a conclusive and final determination of the maximum allowable amount of the Claim of such Creditor, should it become an Allowed Claim. Accordingly, a Creditor whose Disputed Claim is estimated by the Bankruptcy Court pursuant to this Section 7.6(c) shall not be entitled to any subsequent reconsideration or upward adjustment of the maximum allowable amount of such Claim as a result of any subsequent adjudication or actual determination of the allowed amount of such Disputed Claim or otherwise, and the Creditor shall not have recourse to Buyer or any Assets in the event the allowed amount of the Creditor's Claim is at any time later determined to exceed the estimated maximum allowable amount. In all circumstances, the Creditor's sole recourse for the payment of such Disputed Claim should it become an Allowed Claim shall be to the funds maintained in the Disputed Claims Reserve.

(d)    Within thirty (30) days following the Allowance Date for each Disputed Claim that becomes an Allowed Claim after the Distribution Date, the Disbursing Agent shall pay directly to the Holder of such Disputed Claim a distribution from the Disputed Claims Reserve equal to the amount of the Distributions the Holder of such Disputed Claim is entitled to under the Plan on account of its Allowed Claim as of the Allowance Date.

**7.8 Bar Date for Objections to Claims and Interests**. Unless an earlier time is set by Final Order of the Bankruptcy Court, all objections to Claims or Interests must be filed with the Bankruptcy Court by the Claims Objection Bar Date;  however, no such objections may be filed against any Claim or Interest after the Bankruptcy Court has determined that such Claim or Interest is an Allowed Claim or Allowed Interest, as applicable, unless the order which allows such Claim(s) or Interest(s) is vacated, modified or reversed, on appeal or otherwise, or reserves the right to assert subsequent objections. The failure by any party in interest, including Debtor, to object to any Claim or Interest, whether or not unpaid, the purposes of voting shall not be deemed a waiver of such party's rights to object to, or reexamine, any such Claim or Interest, as applicable, in whole or in part for purposes of allowance.

**7.9 Disbursement of Funds**. The Buyer shall make timely all Distributions of cash required under the Plan.  The Buyer shall hold the funds for Distribution to Creditors in trust for the exclusive benefit of the Holders of Allowed Claims and shall not be subject to any claim by any Person except as provided under the Plan.

**7.10    Direction to Parties**. From and after the Effective Date, the Plan Proponent or Buyer may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument required to effect a transfer of property required under the Plan, and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan, pursuant to § 1142(b) of the Bankruptcy Code.

**7.11    Barred Distributions; Setoffs**.

(a)    No Creditor shall receive a Distribution prohibited by § 502(d) of the Bankruptcy Code. The Plan Proponent shall notify each affected Creditor of its contention that § 502(d)

32

prohibits such Distribution prior to the Distribution Date, and no Distribution shall be made to such Creditor until either such contention is resolved in favor of the Creditor by Final Order or the Creditor has timely paid the amount or turned over the property as required by § 502(d) of the Bankruptcy Code.

(b)      The Plan Proponent or Buyer or Committee may, to the extent permitted under applicable law, setoff against any Allowed Claim and the Distributions to be made pursuant to the Plan on account of such Claim, the claims, rights and causes of action of any nature (other than preference claims) that Debtor or Buyer may hold against the Holder of such Allowed Claim which are not otherwise waived, released or compromised in accordance with the Plan; provided, however, that neither such a setoff nor the allowance of any Claim hereunder shall constitute a waiver or release by the Debtor, Buyer, or the Plan Proponent, of any such claims, rights and causes of action that the Debtor or Buyer may possess against such Holder.

(c)      The provisions of sections 7.10(a) and 7.10(b) do not apply to Holders of Classes 2B, 3A, 3B and 4 that vote to accept that Plan (as determined by the ballot recognized by the Bankruptcy Court at the Confirmation Hearing).

**7.12    Special Distribution to Holders of Claims in Class 5**. Notwithstanding anything in the Plan to the contrary, the Holders of Claims in Class 5 shall be entitled, in addition to the treatment provided for in Section 4.7, to a pro rata special distribution of: (1) any undeliverable Distributions that are not claimed pursuant to Section 7.5(c) above; and (2) Assets specifically excluded by Buyer pursuant to the Asset Purchase Agreement, to the extent the Debtor has liquidated the same, to a maximum of the Allowed Claim of each respective Holder.

**ARTICLE 8**

**TITLE TO PROPERTY**

**8.1 Vesting of Property**. Upon Confirmation of the Plan, Debtor will complete the sale of the Assets to Buyer. All Assets conveyed to Buyer pursuant to the Plan will vest in the Buyer free and clear of any liens, claims or encumbrances of any kind or nature of any Creditor of Debtor except to the extent contemplated by the Plan. The remaining Assets of Debtor will consist of any Assets specifically excluded by Buyer under an Asset Purchase Agreement which

will be liquidated and distributed pursuant to the terms of the Plan. Once such other Assets are liquidated and distributed in accordance with the Plan, the Debtor will have no assets remaining to administer.

## ARTICLE 9

## RETENTION OF JURISDICTION

**9.1 General Scope of Jurisdiction**. Following the Effective Date, the Bankruptcy Court shall retain jurisdiction over this Case to the extent legally permissible, including, without limitation, such jurisdiction as is necessary to ensure that the purposes and intent of the Plan are carried out.

**9.2 Claims and Actions**. The Bankruptcy Court also shall retain jurisdiction: (a) to classify, resolve objections to, and determine or estimate pursuant to § 502(c) of the Bankruptcy Code all Claims against and Interests in Debtor; and (b) to adjudicate and enforce all claims and Causes of Action owned by Debtor, including those Causes of Action that may be transferred to Buyer.

**9.3 Specific Jurisdiction**. The Bankruptcy Court also shall retain jurisdiction for the following specific purposes:

(a)    To determine all questions and disputes regarding title to the respective Assets of Debtor, all Causes of Action (whether transferred to Buyer or retained by Debtor), Bankruptcy Claims, controversies, disputes or conflicts, whether or not subject to any pending action as of the Effective Date, between Debtor and any other party, including without limitation any right to recover Assets pursuant to the provisions of the Bankruptcy Code;

(b)    To modify the Plan after the Effective Date pursuant to the Bankruptcy Code, the Bankruptcy Rules, and applicable law;

(c)    To enforce and interpret the terms and conditions of the Plan;

(d)    To enter such orders, including, but not limited to, such future injunctions as are necessary to enforce the respective title, rights and powers of Debtor, and to impose such

limitations, restrictions, terms and conditions on such title, rights and powers as the Bankruptcy Court may deem necessary;

(e)     To enter a final decree closing the Case;

(f)     To correct any defect, cure any omission or reconcile any inconsistency in the Plan or the Confirmation Order as may be necessary to implement the purposes and intent of the Plan;

(g)     To determine any and all objections to the allowance or classification of Claims;

(h)     To adjudicate all claims or controversies to a security or ownership interest in any property of Debtor or in any proceeds thereof;

(i)     To determine any and all applications for allowances of compensation and reimbursement of expenses and the reasonableness of any fees and expenses authorized to be paid or reimbursed under the Bankruptcy Code;

(j)     To determine any applications or motions pending on the Effective Date for the rejection, assumption or assumption and assignment of any Executory Contract or Unexpired Lease, and to hear and determine, and, if need be, to liquidate any and all Claims arising there from;

(k)     To determine any and all applications, adversary proceedings and contested matters that may be pending on the Effective Date or filed thereafter;

(l)     To consider any modification of the Plan permitted by the Bankruptcy Code, and to remedy any defect or omission or reconcile any inconsistency in any order of the Bankruptcy Court, to the extent authorized by the Plan or the Bankruptcy Court;

(m)     To determine all controversies, suits, and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan;

(n)      To consider and act on the compromise and settlement of any Claim against or Cause of Action by or against Debtor arising under or in connection with the Plan or any Bankruptcy Claim;

(o)      To issue such orders in aid of execution of the Plan as may be authorized by § 1142 of the Bankruptcy Code;

(p)      To determine such other matters or proceedings as may be provided for under Title 28 or any other title of the United States Code, the Bankruptcy Code, the Bankruptcy Rules, other applicable law, the Plan or in any order or orders of the Bankruptcy Court, including, but not limited to, the Confirmation Order or any order which may arise in connection with the Plan or the Confirmation Order;

(q)      To make such orders as are necessary or appropriate to carry out the provisions of the Plan;

(r)      To adjudicate all claims of any nature by any person which may be adverse or otherwise affect the value of the property of the Estate dealt with by the Plan;

(s)      To determine any other matters not inconsistent with the Bankruptcy Code; and

(t)      To make such orders and/or take such action as is necessary to enjoin the interference with the implementation or the consummation of the Plan.

**9.4 Failure of Bankruptcy Court to Exercise Jurisdiction**. If the Bankruptcy Court abstains from exercising or declines to exercise jurisdiction, or is otherwise without jurisdiction over any matter arising out of the Case, including the matters set forth in this Article, this Article shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such matter.

## ARTICLE 10

## INJUNCTION AGAINST INTERFERENCE WITH CONSUMMATION OF THE PLAN

**10.1    No Interference**. No Person will be permitted to commence or continue any action or proceeding or perform any act to interfere with the implementation and consummation of the Plan or the Distributions required to be made under the Plan.

**10.2    Injunction**. The provisions of the confirmed Plan shall bind all Creditors and Holders of Interests, whether or not they accepted the Plan and shall discharge Debtor from all Claims that arose prior to Confirmation. Confirmation of the Plan will satisfy all Claims or causes of action against Debtor or the Estate arising out of any Claim addressed by the terms of the Plan and will operate as an injunction against the commencement or continuation of an action, the employment of process, or an act, to collect or recover from, or offset against, Debtor or property of Debtor except as provided in the Plan. Buyer will take the Assets free and clear of any Claim or Interest arising prior to the sale of the Assets, and Holders of Claims against the Assets or Debtor are enjoined from pursuing such Claims against the Assets or Buyer, and in each case except and to the extent contemplated by the Plan.

## ARTICLE 11

## MISCELLANEOUS PROVISIONS

**11.1    Governing Law**. Except to the extent the Bankruptcy Code or Bankruptcy Rules are applicable, and subject to the provisions of any contract, instrument, release, indenture or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Georgia, notwithstanding any conflicts of law principles, rules or laws to the contrary.

**11.2    Successors and Assigns**. The rights, benefits and obligations of any Person named or referred to in the Plan shall be binding upon, and shall inure to the benefit of, the heir, executor, administrator, successor or assign of such Person.

**11.3    Time**. In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be

included. The last day of the period so computed shall be included, unless it is not a Business Day or, when the act to be done is the filing of a paper in court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days. When the period of time prescribed or allowed is less than eight calendar days, intermediate days that are not Business Days shall be excluded from the computation.

**11.4    Construction**. The rules of construction set forth in § 102 of the Bankruptcy Code shall apply to the construction of the Plan.

**11.5    Amendments**. The Plan may be amended, modified or supplemented by the Plan Proponent before the Effective Date and after the Effective Date, in each case only in the manner provided for by § 1127 of the Bankruptcy Code, Rule 3019 of the Bankruptcy Rules, or other applicable law.

**11.6    No Interest or Penalties**. Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, interest which is not allowable under §§ 502(b) or 506(b) of the Bankruptcy Code, and any claims for the imposition of a fine, punitive or exemplary damages, penalty or late charge, shall not be allowed on any Claim.

**11.7    No Attorneys Fees**. No attorneys' fees incurred prior to the Effective Date shall be paid with respect to any Claim or Interest except as specified herein or as allowed by a Final Order of the Bankruptcy Court.

**11.8    Post-Confirmation Effect of Evidences of Claims or Interests**. From and after the Effective Date, all promissory notes evidencing obligations of Debtor and other evidences of Claims and all warrants, options or other evidences of Interests shall be deemed canceled, null, void, and of no force or effect whatsoever against Debtor or the Estate, and shall constitute no more than evidence of the Holder's right to treatment of the Claim or Interest so evidenced in accordance with the Plan; provided, however, this provision shall not apply to any promissory note executed by Buyer as a result of Confirmation of the Plan and Closing of the sale contemplated hereunder.

**11.9    Term of Injunctions or Stays**. Unless otherwise provided in accordance with the Plan or an applicable order of the Bankruptcy Court, all injunctions or stays provided for in the Case pursuant to §§ 105 or 362 of the Bankruptcy Code shall remain in full force and effect until the Effective Date.

**11.10    Exculpation**. On and as of the Effective Date, none of the Debtor, Buyer, Plan Proponent, or the present or former directors, managers, members, officers, employees, agents, advisors, attorneys, professional persons and representatives of each of the foregoing, shall have or incur any liability to any Person for any act or omission in connection with or arising out of their participation in the formulation, confirmation, consummation, and/or administration of the Plan or the property to be distributed under the Plan, except if such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct, and in all respects, each of such Persons listed above in this Section 11.10 shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan and shall be fully protected in acting or in refraining from action in accordance with such advice.

**11.11    Section 1146 Exemption**. Pursuant to § 1146(a) of the Bankruptcy Code, the issuance, transfer or exchange of any security under the Plan or the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan, or the re-vesting, transfer or sale of any real or personal property of Debtor pursuant to, in implementation of, or as contemplated by the Plan shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.

**11.12    Compliance with Tax Requirements**. In connection with the Plan, to the extent necessary, the Buyer shall comply with all reporting and withholding requirements imposed on it by any governmental unit.

**11.13    Further Actions**. Debtor shall be authorized to execute, deliver, file or record such documents, contracts, instruments, releases and other agreements and take such other action as may be necessary to effectuate and further evidence the terms and conditions of the Plan, the closing of the Case, and the winding down of Debtor, including the filing of final tax returns and dissolution of Debtor.

**11.14  Severability of Plan Provisions**. If, prior to Confirmation of the Plan, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; provided that any such alteration or interpretation must be in form and substance acceptable to the Plan Proponent. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**11.15  Plan Controls**. To the extent the terms of the Plan are inconsistent with the Disclosure Statement, the terms of the Plan shall control.

Respectfully submitted this 20th day of December, 2006.

Blue Ridge Investors, II, LP

By:  /s/ Russell Myers
     Russell Myers
     Authorized Representative

Geneva Associates Merchant Banking Partners, I, LLC

By:  /s/ Russell Myers
     Russell Myers
     Authorized Representative

JONES & WALDEN, LLC

 /s/ Leon S. Jones

Leon S. Jones
Georgia Bar No. 003980
M. Denise Dotson
Georgia Bar No. 227230
21 Eighth Street
Atlanta, Georgia 30309
(404) 564-9300 Telephone
(404) 564-9301 Facsimile

Counsel for Blue Ridge Investors, II, LP

and

 /s/ George M. Geeslin

George Martin Geeslin
Georgia Bar No. 288725
Eight Piedmont Center, Suite 550
3525 Piedmont Road, N.E.
Atlanta, GA 30305-1565
(404) 841-3464 Telephone
(404) 816-1108 Facsimile

**EXHIBIT A**

**LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES OF DEBTOR TO
BE ASSUMED AS OF CONFIRMATION**

**[See Attached]**

**Aerosol Packaging, Inc.**
**List of Executory Contracts and Unexpired Leases to be Assumed by Debtor and Assigned to Buyer**

| Contract Party/Address | Contract Type | Estimated Cure Amount |
|---|---|---|
| Verizon Wireless<br>1000 Jeter Ave, Dept. C<br>Opelika, AL 36803<br>8882218514 | Cellular Phone Service<br>Two lines | $0 |
| Cintas Corporation<br>3600 Kennesaw 75 Parkway<br>Kennesaw, GA 30144 | Facility Services Rental Services Agreement -<br>Supplier of Shop<br>Towels/Mops/Mats | $683 |
| Univar USA<br>2145 Skyland Court<br>Norcross, GA30071<br>7702467700 | Letter Agreement dated March 1, 2006 for Empty Drum removal on a quarterly, basis | $0 |
| The BT Raymond Group<br>6650 Kirkville Road<br>East Syracuse, NY 13057<br>(315) 463 5000 | Purchase Agreement dated March 1, 2004 - guarantying prices to customer | $0 |
| Bway Packaging<br>8200 Broadwell Road<br>Cincinnati, Ohio 45244<br>(513) 3882200 | Letter Agreement dated April 17, 2006 - exclusive welded steel cans supplier | $0 |
| Darbi Chemical<br>PO Box 669937<br>Marietta, GA 30066 | Letter Agreement dated March 15, 2006 for Private Label Product (AS will package and store product) | $0 |
| Cargill, Incorporated<br>15407 McGinty Road West<br>Wayzata. MN | Packaging and Marketing Agreement dated September 26, 2005 - private label vegetable oil based products (exclusive use of Cargill oil) | $0 |
| Pitney Bowes Credit Corp.<br>PO Box 856460<br>Louisville, KY 40285 | Lease Agreement  Supplier of Postage stamps/tapes | $1,571 |
| Nalley Lexus  Marietta<br>1431 Cobb Parkway South<br>Marietta, GA 30060 | Lease of Automobile | $0 |
| Nalley Infinity of Marietta<br>1431 Cobb Parkway South<br>Marietta, Georgia 30060 | Lease of Automobile | $0 |
| GE Group Life Assurance Co<br>PO Box 725<br>Windsor, CT 06095 | Employee Accident and health plan provider | $0 |
| Atlanta Fork Lifts, Inc. | Lease of Seven Forklifts | $8,780 |

| Contract Party/Address | Contract Type | Estimated Cure Amount |
|---|---|---|
| 3111 E. Ponce de Leon Ave. Scottdale, GA 30079 | | |
| MIRZACO (USA), Inc. 6802 Glenridge Drive, Ste E Atlanta, GA 30328 | Sales Agent Agreement dated April 1, 2005 | $0 |
| RAMMCO, LLC 3760 Sixes Road, #126-238 Canton, GA 30114 | Sales Agent Agreement dated February 1, 2006 | $0 |
| K2r Produkle AG Sagapha AG HaggenstraBe 45 CH9014 St. Gallen Switzerland | Distribution Agreement and Trade Mark License | $0 |
| Avaya Financial Services P.O. Box 93000 Chicago, IL 60673 | Telephone Lease | $358 |
| Lobo M.B.F., Inc. 8602 Stoney Bridge Drive Cincinnati, OH 45244 | Manufacturer Representative Agreement | $13,164 |
| | | |
| | TOTALS | $24,556 |

**EXHIBIT B**

**LIST OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES
OF DEBTOR TO BE REJECTED AS OF CONFIRMATION**


**[See Attached]**

**Aerosol Packaging, Inc.**
**List of Executory Contracts and Unexpired Leases**
**to be Rejected by Debtor**

| Contract Party/Address | Contract Type | Estimated Rejection Claim (based on Scheduled Amount and Proofs of Claim filed) |
|---|---|---|
| Anderson LeNeave & Co<br>5935 Carnegie Blvd.<br>Charlotte, NC 28209 | Investment Banker/Financial Advisor (pre-petition) | $251,000 |
| Navigant Consulting<br>c/o Hunton & Williams<br>600 Peachtree St., N.E.<br>Atlanta, GA 30308 | Corporate Restructuring Consulting (pre-petition) | $37,061 |
| Aeropres Corporation<br>PO Box 78588<br>Shreveport, LA 711378588 | Forbearance Agreement | Included as Vendor Claims |
| United States Can Company<br>LBX 1187<br>Chicago, IL 60674 | Forbearance Agreement | Included as Vendor Claims |
| BWAY Corporation<br>PO Box 277306<br>Atlanta, GA 30384731)6 | Forbearance Agreement | Included as Vendor Claims |
| CL&D Graphics<br>101 W. 2nd St.<br>Oconomowoc, WI 53066 | Forbearance Agreement | Included as Vendor Claims |
| Design Packaging Inc.<br>PO Box 933017<br>Atlanta, GA 311933017 | Forbearance Agreement | Included as Vendor Claims |
| Ashland, Inc.<br>PO Box 101489<br>Atlanta, GA 303921489 | Forbearance Agreement | Included as Vendor Claims |
| Precision Valve Corporation<br>PO Box 7005<br>Yonkers, NY 10710 | Forbearance Agreement | Included as Vendor Claims |
| UNIVAR USA, Inc.<br>PO Box 409692<br>Atlanta, GA 303849692 | Forbearance Agreement | Included as Vendor Claims |
| Newman Green, Inc.<br>57 Interstate Road<br>Addison, IL 601014568 | Forbearance Agreement | Included as Vendor Claims |
| Seaquist Perfect Dispensing<br>PO Box 96656<br>Chicago, IL 606936656 | Forbearance Agreement | Included as Vendor Claims |

| Contract Party/Address | Contract Type | Estimated Rejection Claim (based on Scheduled Amount and Proofs of Claim filed) |
|---|---|---|
| Owens Coming Dept. AT. 40142 Atlanta, GA 31192-0142 | Forbearance Agreement | Included as Vendor Claims |
| Alchem Chemical Company PO Box 934085 Atlanta, GA 31193 | Forbearance Agreement | Included as Vendor Claims |
| Underwood Mold Company PO Box 1607 Woodstock, GA30188 | Forbearance Agreement | Included as Vendor Claims |
| Peachtree Technology Assoc., Inc. 330 Bell Park Drive Woodstock, GA 30188 | Forbearance Agreement | Included as Vendor Claims |
| Inmark. Inc. PO Box 931999 Atlanta, GA 31193-1999 | Forbearance Agreement | Included as Vendor Claims |
| Arylessence, Inc. 1091 Lake Drive Marietta, GA 30066 | Forbearance Agreement | Included as Vendor Claims |
| Rohm and Haas Chemicals, LLC PO Box 53018 Philadelphia, PA 19178-3018 | Forbearance Agreement | Included as Vendor Claims |
| Compliance Technologies, Inc. 135 Mirramont Lake Drive Woodstock, GA 30189 | Forbearance Agreement | Included as Vendor Claims |
| Cap & Seal Company 1591 Fleetwood Drive Elgin, IL 60123 | Forbearance Agreement | Included as Vendor Claims |
| Brenntag MidSouth, Inc. 3796 Reliable Pkwy Chicago, IL 606860037 | Forbearance Agreement | Included as Vendor Claims |

| | | |
|---|---|---|
| Creative Marketing Group<br>117 Lucinda Drive<br>Babylon, NY | Principal Management Group<br>Agreement dated December 1, 2005<br>Food products marketing agent/promoter<br>(commissions contract) | $0 |
| Southern Office Machines<br>1555 Williams Drive,<br>Ste 110<br>Marietta, GA 30066<br>(7709198989 | Copier Service Contract | Unknown |
| CIT Technology Financing<br>PO Box 9797220<br>Miami, FL 33197 | Copier Lease and Financing | Unknown |
| H. Thomas Bickley<br>' 313 Weatherstone Lane<br>Marietta, GA 30068 | Sales Agent Agreement | $0 |
| James Stancil<br>103 Eagle Point Drive<br>Dallas, Georgia 30132 | Sales Agent Agreement dated<br>September 1, 2005 | $0 |
| NIK and Associates<br>11402 Aries Drive<br>Orlando, FL 32837 | Sales Agent Agreement dated February<br>13, 2006 | $0 |